**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**TED MARIO BLACKMON AND**
**RUTHIE BLACKMON, IN HER**
**INDIVIDUAL AND REPRESENTATIVE**
**CAPCITY FOR THE ESTATE OF**
**KHANCE BLACKMON**

**VS.**

**BRACKEN CONSTRUCTION**
**COMPANY, INC., C3 CONSTRUCTION**
**SERVICES, INC., JHON EVELIO**
**JARAMILLO, ANTHONY VER MEER,**
**THE CHARTER OAK FIRE**
**INSURANCE COMPANY, TRAVELERS**
**PROPERTY CASUALTY COMPANY OF**
**AMERICA, AND TRAVELERS EXCESS**
**AND SURPLUS LINES COMPANY**

**NO.: 18-CV-00142-BAJ-RLB**

**JUDGE: BRIAN A. JACKSON**

**MAGISTRATE JUDGE: RICHARD L.**
**BOURGEOIS**

**PLAINTIFFS' FIRST SUPERSEDING AND**
**AMENDING COMPLAINT FOR DAMAGES**

NOW INTO COURT, through undersigned counsel come Plaintiffs Ted Mario Blackmon individually for his own damages and Ruthie Blackmon, individually and in her representative capacity as Administrator of decedent Khance Blackmon's Estate, through undersigned counsel, who pursuant to Fed. R. Civ. P. 15(a)(1) file this First Superseding and Amending Complaint for Damages, which replaces and supersedes the Plaintiffs' original Petition for Damages, as follows:

## PARTIES

1.

Made Defendants herein are the following Parties who are liable individually, jointly, and solidarily unto the Plaintiffs for all causes of action and damages as set forth in this Petition:

a)   **Bracken Construction Company, Inc.**, a Mississippi corporation registered to do business in the State of Louisiana, which may be served through its attorney of record or through its agent for service of process, National Registered Agents, Inc., 3867 Plaza Tower Drive, Baton Rouge, Louisiana, 70816;

b)   **C3 Construction Services, Inc.**, a Texas Corporation not registered to do business but actually doing business in the State of Louisiana, which may be served through its attorney of record or under La. R.S. 13:3204 by sending a certified copy of the citation and the petition via registered or certified mail to its principal office address at 8300 FM 1960 West, Suite 450, Houston, Texas, 77070;

c)   **Jhon Evelio Jaramillo**, a resident of the State of Mississippi, who may be served through his attorney of record or under La. R.S. 13:3204 by sending a certified copy of the citation and the petition via registered or certified mail to his place of residence at 251 Lighthouse Lane, Brandon, Mississippi, 39047;

d)   **Anthony Ver Meer**, a resident of the State of Alabama, who may be served under La. R.S. 13:3204 by sending a certified copy of the citation and the petition via registered or certified mail to his place of residence at 5741 Willow Lake Dr., Hoover, Alabama, 35244-4136;

e)   **The Charter Oak Fire Insurance Company**, a foreign corporation and insurance company, incorporated in the State of Connecticut authorized to and doing business in the

State of Louisiana, which may be served through its attorney of record or through the Secretary of State for the State of Louisiana in accordance with Louisiana R.S. 13:3472;

f)   **Travelers Property Casualty Company of America**, a foreign corporation and insurance company, incorporated in the State of Connecticut authorized to and doing business in the State of Louisiana, which may be served through its attorney of record or through the Secretary of State for the State of Louisiana in accordance with Louisiana R.S. 13:3472; and

g)   **Travelers Excess and Surplus Lines Company**, a foreign insurance company authorized to do and doing business in the State of Louisiana, which may be served through its attorney of record or through the Secretary of State of Louisiana in accordance with Louisiana R.S. 13:3472.

2.

Defendants C3 Construction Services, Inc., Bracken Construction Company, Inc., and Jhon Jaramillo are at times collectively referred to as the "Insureds." Defendants Charter Oak Fire Insurance Company, Travelers Property Casualty Company of America, and Travelers Excess and Surplus Lines Company are at times collectively referred to as the "Insurers."

3.

At all times pertinent to the allegations herein, Anthony Ver Meer was a licensed Louisiana claims adjuster, License # 572664, and maintained extensive and repeated contacts with and provided services within the State of Louisiana, and was aware that his actions constituted violations of Louisiana law. The following is an excerpt from Anthony Ver Meer's LinkedIn profile, available at https://www.linkedin.com/in/anthony-ver-meer-0ba7a42a/:

**Senior Technical Specialist - Specialty Liability**
Company Name Travelers
Dates Employed Oct 2015 – Dec 2017

Employment Duration 2 yrs 3 mos

**<u>Specialized liability claims professional who handles severity level claims across the southeast (FL, GA, AL, MS, LA, TX) as a virtual employee.</u>** Claims include general liability cases such as work zone accidents, construction project injuries, and utility strikes as well as more complex and severe auto liability claims. My work includes gathering information and supporting documentation in order to make coverage and liability determinations, analyzing contracts, communicating decisions to policy holders, claimants and their representatives, strategically coordinating with attorneys to defend insureds in litigation, evaluating damages and negotiating settlements.

In addition to claim handling, I assist with account services through communications with policy holders and agencies regarding claims and presenting claims at periodic claim file reviews. I am part of designated claim teams for many large accounts with specific handling instructions.

In addition to these duties, I administer the Region's SharePoint site and lead special projects to assist business partners in assessing legal and contractual climate in various venues. (Emphasis Added)

4.

Plaintiffs Ruthie Blackmon and Ted Blackmon are residents of the State of Louisiana.

**VENUE**

5.

Venue is proper in East Baton Rouge Parish, Louisiana as to all of the Defendants who and which are solidarily liable under the provisions of La. Code Civ. Proc. art. 42 *et seq.*, including but not limited to La. Code Civ. Proc. art. 73, and under La. R.S. 13:3203.

## COMMON KNOWLEDGE, ACTS, BENEFIT, AND SCHEME
## OF THE DEFENDANT INSURERS AND THEIR INSUREDS

6.

At all material times pertinent hereto, Bracken Construction Company, Inc. and C3 Construction Services, Inc. were both being operated as closely held companies sharing and intermingling the resources, experience, and knowledge of their senior executives, directors, officers, and employees, including but not limited to Jhon Jaramillo, who was employed as VP of Human Resources for both C3 Construction Services, Inc. and Bracken Construction Company, Inc., and who, at all pertinent and material times, was under the payroll of Bracken Construction Company, Inc.

7.

At all times pertinent to the facts of this Petition, Jhon Jaramillo was a high-level joint employee of C3 Construction Services, Inc. and Bracken Construction Company, Inc., and was acting within the course and scope of his employment in the furtherance of the business of both of these employers. As such, C3 Construction Services, Inc. and Bracken Construction Company, Inc. are solidarily liable and responsible to Plaintiffs for Jhon Jaramillo's acts, omissions, and negligence, which were a proximate cause of Plaintiffs' damages, under the legal doctrine of respondeat superior.

8.

Further, C3 Construction Services, Inc. and Bracken Construction Company, Inc., as closely held and related companies, utilized joint employees, officers, directors, and senior executives, including but not limited to Defendant Jhon Jaramillo, who was a high-level joint employee of both companies. At the time of the automobile collision herein alleged, Jhon Jaramillo was acting within the capacity as a joint scope employee and as VP of Human

Resources for both C3 Construction Services, Inc. and Bracken Construction Company, Inc. Further, C3 Construction Services, Inc. and Bracken Construction Company, Inc. shared common officers, directors, and employees, including but not limited to Jhon Jaramillo, and the intertwined both of the companies' businesses operations, jointly maintained, possessed, and shared actual and constructive information and knowledge relating to the automobile collision, the nature and extent and types of claims possessed by Plaintiffs, the claims handling and negotiations with the Plaintiffs and other acts of their various primary and excess insurers as alleged herein, including the fact that the Insurers hid the existence of certain available coverages and made other false and material omissions and misrepresentations, which were made on behalf of and in furtherance of the interest of each and all of the Defendants in an effort to fraudulently induce Plaintiffs to enter into a settlement for less than their full damages.

9.

At all times pertinent to the facts of this Petition, Anthony Ver Meer was acting within the course and scope of his employment in the furtherance of the business of the Insurers, and as an agent for each of the Insurers and of the Insureds. As such, the Insurers and the Insureds are solidarily liable and responsible to Plaintiffs for Anthony Ver Meer's acts, omissions, and negligence, which were a proximate cause of Plaintiffs' damages, under the legal doctrine of respondeat superior and/or the law of agency.

10.

At all times pertinent to the facts of this Petition, the Insurers had actual knowledge of the actions and statements of Anthony Ver Meer in this matter and/or would be vicariously imputed with the guilty knowledge and scienter of Anthony Ver Meer as he was acting with their consent

as a joint and/or borrowed employee of the Insurers and acting in furtherance of their common and mutual pecuniary interest and benefit.

11.

Travelers Property Casualty Company of America and Travelers Excess and Surplus Lines Company are solidarily liable and responsible to Plaintiffs for the acts of licensed claims adjuster Anthony Ver Meer, their own acts committed through their representatives, and the joint acts of their insureds, Bracken Construction Company, Inc. and Jhon Jaramillo.

12.

The Charter Oak Fire Insurance Company is solidarily liable and responsible to Plaintiffs for the acts of licensed claims adjuster Anthony Ver Meer, their own acts committed through their representatives, and the joint acts of their insureds, C3 Construction Services, Inc. and Jhon Jaramillo.

## CAUSES OF ACTION AND BASIS OF CLAIMS

### First Cause of Action: Negligent Operation of an Automobile Causing Physical, Emotional, and Psychological Injuries to Ted Blackmon

13.

At all times and pertinent to all actions alleged herein, on or about Wednesday, June 15, 2016, Jhon Jaramillo, in the course and scope of his employment with C3 Construction Services, Inc. and Bracken Construction Company, Inc., traveled into and conducted business in the state of Louisiana on behalf of these employers. That same day, Jhon Jaramillo continued his employment-related travels from Louisiana to Mobile, Alabama, and then toward Jackson, Mississippi.

14.

On or about June 15, 2016, at approximately 3:55 p.m., while acting in the course and scope of his employment with C3 Construction Services, Inc. and on a dual mission and course and scope for Bracken Construction Company, Inc., Jhon Jaramillo was the operator of a 2015 Dodge Ram 250 pickup truck traveling westbound on Highway US-98 (Moffett Rd.) approaching the Escatawpa River Bridge in rural Mobile, Alabama, in the county of Mobile.

15.

On June 15, 2016, at approximately 3:55 p.m., a 1997 Lexus LS, operated by Ted Blackmon, was traveling east on Highway US-98 (Moffett Rd.) in rural Mobile, Alabama.

16.

Shemika Robinson, Ted Blackmon's long-time companion, and Khance Blackmon, the minor son of Ted Blackmon and Shemika Robinson, were passengers in the 1997 Lexus LS operated by Ted Blackmon.

17.

Highway US-98 (Moffett Rd.) was and is a two-lane highway. It has one lane for westbound traffic and one lane for eastbound traffic. There is no center turn lane.

18.

On June 15, 2016, at approximately 3:55 p.m., it was daylight and the weather was clear and dry. There were no weather conditions or road conditions that reduced Jhon Jaramillo's visibility of oncoming traffic, including the 1997 Lexus LS.

19.

As Ted Blackmon was driving eastbound, Jhon Jaramillo while impaired and under the influence of medications, wantonly, recklessly, and in an unsafe manner and with disregard for

the laws and for the lives and safety of others moved from the westbound lane into the eastbound lane to pass a 1997 Nissan XE truck, bringing him directly into the path of oncoming traffic, and causing him to crash head-on into the 1997 Lexus LS being operated by Ted Blackmon. The aforementioned automobile accident and resulting death and injuries were caused by the gross and wanton inattentiveness and recklessness of Jhon Jaramillo and his operation of his motor vehicle in violations of various motor vehicle safety laws designed to govern his conduct under such circumstances and protect other motorists from loss of life and harm.

20.

As a direct and proximate result of the automobile collision caused by Jhon Jaramillo, Shemika Robinson, Khance Blackmon, and Ted Blackmon sustained serious physical injuries and emotional and mental distress.

21.

Tragically, the serious injuries sustained by Shemika Robinson and Khance Blackmon in the automobile collision resulted in their suffering, anguish, and deaths.

22.

As a direct and proximate result of Jhon Jaramillo's negligence, Ted Blackmon suffered physical injuries, damage to property, mental and emotional distress, and other harm resulting from his own injuries, as well as from the loss of his minor son Khance Blackmon and witnessing the horrific pre-impact and post-impact of the collision, including witnessing the graphic, horrendous, and severe head and other traumatic injuries and death of his long-time companion and his minor son.

23.

As a direct result of the negligence, fault, and breach of duties owed by Jhon Jaramillo, C3 Construction Services, Inc., and Bracken Construction Company, Inc., Plaintiff Ted Blackmon has suffered personal injury damages, including but not limited to the following:

1. Physical pain;

2. Grief, mental anguish and emotional distress;

3. Loss of earning capacity;

4. Loss of wages and earnings;

5. Disfigurement;

6. Physical impairment;

7. Medical care and expenses;

8. Loss of services;

9. Loss of consortium; and

10. All other damages allowed by law and equity.

24.

The negligence of Jhon Jaramillo includes, but is not limited to, the following acts and/or omissions of negligence that proximately caused the automobile collision and the injuries to Ted Blackmon:

a. Failing to keep a proper lookout for vehicles on the roadway;

b. Failing to control speed under the circumstances;

c. Failing to yield the right of way;

d. Failing to maintain control of his motor vehicle at all times;

e. Failing to timely and properly apply brakes under the circumstances;

f.   Failing to take evasive action to avoid the collision;

g.   Failing to keep the vehicle under proper control;

h.   Failing to maintain his lane of travel;

i.   Failing to properly pass a vehicle on a two lane road;

j.   Failing to maintain alertness and driving while impaired and under the influence of medications which were known and/or should have been known to him to cause poor judgment, inattentiveness, or drowsiness;

k.   Driving a vehicle under such circumstances in which he was physically or mentally unfit or "impaired" and it was unsafe and an endangerment to others to operate the same;

l.   Failing to operate the vehicle with due case for the safety of others, including Ted Blackmon and Khance Blackmon; and

m.  Failing to follow the rules of the road and traffic laws of the State of Alabama.

25.

At the time of the subject incident, C3 Construction Services, Inc. and Bracken Construction Company, Inc. were responsible for the operational safety of their vehicles and their drivers, respectively.

26.

The independent negligence of C3 Construction Services, Inc. and Bracken Construction Company, Inc. that proximately caused the automobile collision and the injuries to Ted Blackmon includes, but is not limited to one or more of the following:

a.   Allowing Jhon Jaramillo to operate its vehicle;

b.   Failing to properly train its drivers and employees;

c.  Failing to establish an adequate safety program;

d.  Failing to adequately supervise its drivers and employees;

e.  Failing to establish procedures to ensure its vehicles are not operated by unsafe drivers;

f.  Failing to properly qualify its drivers and employees;

g.  Failing to establish adequate policies and/or adequately enforce policies for its drivers and employees;

h.  Failing to promulgate and enforce company policies regarding the use of medications and drugs that may cause drowsiness;

i.  Failing to monitor the conduct and driving of employees who take medication that may affect alertness;

j.  Negligently hiring, supervising, and retaining Jhon Jaramillo who was unqualified, incompetent, and a careless driver and/or employee; and

k.  Negligent entrustment of the vehicle to Jhon Jaramillo when he was under the influence of medication.

27.

Each of the foregoing acts and omissions constitutes independent acts of negligence on the part of Jhon Jaramillo, C3 Construction Services, Inc., and Bracken Construction Company, Inc., and one or more or all of the above stated acts were the proximate causes of the injuries to Ted Blackmon.

**Second Cause of Action: Negligent Operation of an Automobile Causing Personal Injuries and the Wrongful Death of Ted Blackmon's Minor Son, Khance Blackmon**

28.

Plaintiffs repeat and reiterate all of the foregoing allegations as if herein set forth, and in addition, allege:

29.

The above wanton acts and omissions of Jhon Jaramillo, C3 Construction Services, Inc., and Bracken Construction Company, Inc. were the proximate cause of the wrongful death of Khance Blackmon, the minor son of Ted Blackmon, giving rise to claims being by Ted Blackmon and/or the estate of Khance Blackmon, the rights of which are due to Plaintiff Ted Blackmon as the sole and rightful heir of the estate.

30.

Plaintiff Ruthie Blackmon is the mother of Plaintiff Ted Blackmon and the paternal grandmother of Khance Blackmon, and at all relevant times Ruthie Blackmon has acted as the personal representative of Khance Blackmon in probate proceedings captioned *In re: Estate of Khance Blackmon*, No. 2017-CP-573, in the Circuit Court for Escambia County, Florida, Probate Division. The wrongful acts of the defendants have caused emotional damage, including distress and anguish over the manner in which she was tricked and defrauded into proceeding with the probate proceeding.

31.

The acts and omissions of Jhon Jaramillo, C3 Construction Services, Inc., and Bracken Construction Company, Inc. that were the proximate cause of the wrongful death of Khance Blackmon resulted in damages to Plaintiffs, including but not limited to the following:

    a.   Pecuniary loss in the past and future;

    b.  Loss of consortium, companionship and society in the past and future;

    c.  Mental anguish in the past and future;

    d.  Loss of inheritance;

    e.  Loss of community estate and addition to estate;

    f.  Funeral and burial expenses;

    g.  Loss of love, affection, support, and services;

    h.  Punitive damages; and

    i.  All other damages allowed by law and equity.

32.

Plaintiffs further assert the right to recover all damages for the personal injuries caused to Khance Blackmon before his death. The acts and omissions of Jhon Jaramillo, C3 Construction Services, Inc., and Bracken proximately caused these personal injury damages, including but not limited to the following:

1. Physical pain;

2. Mental anguish and emotional distress;

3. Disfigurement;

4. Physical impairment;

5. Medical care and expenses;

6. Loss of services;

7. Loss of consortium; and

8. All other damages allowed by law and equity.

**Third Cause of Action: Insurance Bad Faith and Deceptive Settlement Practices Involving Settlement of Claims Committed in the State of Louisiana and Upon Louisiana Resident Ruthie Blackmon as Representative of the Estate of Khance Blackmon**

33.

Plaintiffs repeat and reiterate all of the foregoing allegations as if herein set forth, and in addition, allege:

34.

Following the June 15, 2016 automobile collision and the resulting death of Khance Blackmon, Ruthie Blackmon (while residing in Louisiana and in her capacity as the representative of the estate of Khance Blackmon) and Ted Blackmon (while also residing in Louisiana) both engaged in discussions with Anthony Ver Meer, a "Claim Professional," who engaged in claims negotiations and made verbal and written assertions, statements, and representations regarding the amounts of available insurance coverages to Ruthie Blackmon and Ted Blackmon while knowing them to be in the state of Louisiana and/or residents thereof, on behalf of the Insurers and the Insureds, regarding the settlement of claims arising from the death of Khance Blackmon.

35.

The discussions with Anthony Ver Meer occurred during times when Ruthie Blackmon and Ted Blackmon were not represented by legal counsel (as a result of the fraudulent misrepresentations of Anthony Ver Meer as more fully set out below). Further, Anthony Ver Meer's misrepresentations regarding the lack of additional insurance coverage defrauded Ruthie Blackmon and Ted Blackmon into settling for less than the fair amount of the damages which they were due. Defendants' misrepresentations were intended to lead to the disengagement of counsel to prevent Plaintiffs from finding out the actual amounts of coverage. Defendants' and

Anthony Ver Meer's actions in improperly withholding and misrepresenting information regarding available coverages constituted unfair and deceptive settlement practices and resulted in Plaintiffs being damaged, including accepting less in settlement than just and fair compensation for their individual claims and those arising from the death of Khance Blackmon.

36.

Further, at all material times up to and after the settlement, although Anthony Ver Meer knew that this was a policy limits case with punitive and other damages possibly exceeding the additional $11,000,000.00 in coverage from the hidden policies and coverages, Anthony Ver Meer used such misrepresentations to improperly obtain Plaintiffs' consent to grossly inadequate settlements for their claims, while Plaintiffs were known to Anthony Ver Meer to still be operating under the Defendants' pretenses that there was only a single policy of insurance and limits of $1,000,000.00 covering all claims of Plaintiffs and other injured claimants.

37.

Anthony Ver Meer, on behalf of himself and the Insureds and Insurers, intentionally and knowingly transacted business in and directed communications and conduct into the state of Louisiana through telephone calls, documents, correspondence, and other acts directed toward Ruthie Blackmon and Ted Blackmon, who were at all material times located in and residing in the State of Louisiana.

38.

In the course of the negotiations, and through fraudulent misrepresentations, omissions, and silence, Anthony Ver Meer, on behalf of himself and the Insureds and Insurers, represented to Ruthie Blackmon and Ted Blackmon in correspondence dated July 22, 2016, and repeatedly in other communications with Plaintiffs, that the only insurance policy that provided coverage for

Khance Blackmon's death at the time of the automobile collision was Policy # BA-7F448126-15-CNS, in the amount of $1,000,000.00, issued by The Charter Oak Fire Insurance Company to its insured C3 Construction Services, Inc.

39.

Anthony Ver Meer, on behalf of himself and the Insureds and Insurers, further represented to Ruthie Blackmon and Ted Blackmon that the $1,000,000.00 policy issued by The Charter Oak Fire Insurance Company to C3 Construction Services, Inc., was the only policy providing coverage for the automobile collision and would have to be allocated among the various claimants involved in the automobile collision caused by Jhon Jaramillo.

40.

Plaintiffs received no other correspondence or communications from Anthony Ver Meer or from the other Defendants regarding coverage that would have been available for the automobile collision other than the policy issued by The Charter Oak Fire Insurance Company to C3 Construction Services, Inc.

41.

Induced by and relying upon the fraudulent misrepresentations, omissions, and silence of Anthony Ver Meer, on behalf of himself and the Insureds and Insurers, Ruthie Blackmon and Ted Blackmon at all pertinent times believed that there was only a single policy of $1,000,000.00 available to all claimants involved in the automobile collision caused by Jhon Jaramillo.

42.

Through discussions with Anthony Ver Meer and the Insurers, and relying upon the representation that there was only $1,000,000.00 in coverage available for all claimants involved

in the automobile collision, Plaintiffs ultimately negotiated a proposed settlement of $650,000.00 for claims related to the wrongful death of Khance Blackmon.

43.

Before agreeing to the proposed settlement of the claims related to the injuries and death of his son Khance Blackmon, in order to obtain more complete recovery for those claims, during February 2017, Ted Blackmon consulted with and retained the law firm of Ward & Barnes, P.A., in Florida. In their efforts to determine whether additional coverage was available to Plaintiffs, Ward & Barnes, P.A. communicated with Anthony Ver Meer and/or other representatives of the Insurers, who represented to Ward & Barnes, P.A. that there was no additional coverage other than the $1,000,000.00 in coverage previously disclosed to the plaintiffs.

44.

Specifically, on February 24, 2017, Austin Ward with the law firm of Ward & Barnes, P.A. faxed a letter of representation to Anthony Ver Meer. In that letter, Austin Ward requested that Anthony Ver Meer provide the names of all insurers and insureds, the limits of any coverages available for the automobile accident, copies of the policies, and the identities of any other insurers providing excess or umbrella liability coverage for the automobile accident. That same day, Anthony Ver Meer and Austin Ward spoke via telephone. During the telephone conversation and in later communications that followed, Anthony Ver Meer fraudulently misrepresented and failed to provide truthful pertinent information regarding the coverage available for the automobile to Austin Ward and the law firm of Ward & Barnes, P.A., who Anthony Ver Meer knew was acting on behalf of Plaintiffs, again representing that there was only $1,000,000.00 in total available coverage.

45.

Based on these fraudulent acts, misrepresentations, and omissions by Anthony Ver Meer, who was acting on behalf of himself and all Defendants, Ward & Barnes, P.A. informed Ted Blackmon that he could obtain a better result by not engaging Ward & Barnes, P.A. to represent him, as his proposed settlement of $650,000, which Ted Blackmon had already negotiated with Insurers, as in light of the limited available coverage that they thought would be available, would then be reduced by a percentage associated with their retention agreement, thereby resulting in a lesser net recovery to Ted Blackmon. Therefore, Ted Blackmon and Ward & Barnes, P.A. made a mutual decision, relying upon Insurers' misrepresentations regarding the available coverage, that there was no need for Ted Blackmon to obtain further legal representation, as there was purportedly no additional coverage to be pursued.

46.

Following the fraudulent misrepresentations of Anthony Ver Meer and the Insurers regarding the lack of additional coverages beyond the $1,000,000.00 policy issued by The Charter Oak Fire Insurance Company that had been disclosed, Plaintiffs and Ward & Barnes, P.A. made the mutual decision to disengage the firm as Plaintiffs' personal injury attorneys and terminate their representation of Plaintiffs. Thereafter, in May 2017, at the behest of Anthony Ver Meer and in an effort by Defendants to quickly finalize the settlement, Plaintiffs engaged Florida probate counsel with Medley Law Firm to proceed with the opening of the estate of Khance Blackmon and obtain court approval for the settlement of the claims related to Khance Blackmon.

47.

Throughout the process of opening the estate and filing the necessary pleadings to approve the settlement agreement, Anthony Ver Meer, on behalf of himself and Insurers, represented to Medley Law Firm through fraudulent misrepresentations, omissions, and silence that there was no additional coverage available to the Plaintiffs than the $1,000,000.00 previously disclosed to the plaintiffs.

48.

Through his fraudulent misrepresentations, omissions, and silence, Anthony Ver Meer, on behalf of himself and the Insureds and Insurers, caused Ruthie Blackmon, as personal representative of the estate of Khance Blackmon, to execute an agreement in the state of Louisiana purporting to release all claims on behalf of Khance Blackmon against all Insureds and Insurers, despite the fact that Anthony Ver Meer led Plaintiffs, as well as Ward & Barnes, P.A. and Medley Law Firm, who were acting on behalf of Plaintiffs, to believe that there were no other parties that would or could contribute to the settlement.

49.

The fraudulently induced settlement agreement was sent by Anthony Ver Meer through the U.S. mail into the State of Louisiana, where it was received by and executed by Ruthie Blackmon in the State of Louisiana, before Ruthie Blackmon delivered the executed agreement via fax from the State of Louisiana to Anthony Ver Meer.

50.

Through his fraudulent misrepresentations, omissions, and silence, Anthony Ver Meer, on behalf of himself and the Insureds and Insurers, caused Ruthie Blackmon through the Medley Law Firm, to file the signed agreement purporting to settle all claims on behalf of Khance

Blackmon against the Insureds and Insurers into the probate proceeding of Khance Blackmon, *In re: Estate of Khance Blackmon*, No. 2017-CP-573, for the purpose of obtaining an order approving the agreement from the Probate Division of the Circuit Court for Escambia County, Florida. The actions of Anthony Ver Meer and the Insurers also caused Ruthie Blackmon, as the estate representative, and Medley Law Firm, which represented Ruthie Blackmon and the Estate in the probate proceeding, to fail to disclose to the probate court in Escambia County, Florida that approved the settlement the full amount of available coverage and the names of the Insurers that were responsible for the full amount of coverage. The Court's approval of the settlement was wrongfully sought and obtained as a direct result of Insurers' fraudulent misrepresentations to Plaintiffs and their agents, as well as through the Defendants' continued failure to disclose pertinent information that should have been disclosed to Plaintiffs and the Court, all of which constituted an additional fraud upon the Court by the Defendants.

51.

Unbeknownst to Ruthie Blackmon or Ted Blackmon at the time of the signing of the agreement to settle the claims of Khance Blackmon, and directly contrary to the representations made by Anthony Ver Meer on behalf of the Defendants, there were in fact two other policies providing coverage to Jhon Jaramillo and his employers for the claims of the Plaintiffs and other claimants injured in the June 15, 2016 automobile collision caused by Jhon Jaramillo: Policy # DT-810-5684B354-TIL-15 for $1,000,000 issued by Travelers Property Casualty Company of America to Bracken Construction Company, Inc.; and Policy # ZUP-91M09434-15-NF for $10,000,000 issued by Travelers Excess and Surplus Lines Company to Bracken Construction Company, Inc., under both of which policies Jhon Jaramillo was also insured.

52.

At all relevant times, including at the time of his multiple conversations with Ruthie Blackmon and Ted Blackmon, as well as with their agents Ward & Barnes, P.A. and the Medley Law Firm, Anthony Ver Meer knew of the existence of the policies issued by Travelers Property Casualty Company of America and Travelers Excess and Surplus Lines Company to Bracken Construction Company, Inc., and he knew that those policies provided coverage for the automobile collision and the damages caused, including claims relating to the wrongful death of Khance Blackmon.

53.

For the purpose of inducing Ruthie Blackmon and Ted Blackmon to settle the claims of Khance Blackmon arising from the automobile collision caused by Jhon Jaramillo, Anthony Ver Meer, on behalf of himself and the Insureds and Insurers, concealed from and otherwise failed to disclose to Ruthie Blackmon and/or Ted Blackmon through fraudulent misrepresentations, omissions, and silence the existence of or the amounts of the policies issued by Travelers Property Casualty Company of America and Travelers Excess and Surplus Lines Company to Bracken Construction Company, Inc. and providing coverage to both it and Jhon Jaramillo.

54.

As a direct result of Anthony Ver Meer's failure to disclose, and active concealment through fraudulent misrepresentations, omissions, and silence, pertinent facts regarding the existence of other policies and the amounts of coverage provided by those policies for the automobile collision, Ruthie Blackmon and Ted Blackmon were deprived of the opportunity to fully understand and evaluate the context for the Defendants' offers to settle Plaintiffs' claims.

55.

Not only did Defendants have multiple opportunities to disclose pertinent facts regarding the available coverage from the date of the accident in June 2016 until the approval of the settlement by the Escambia County, Florida court in October 2017, but they had a continuing duty prior to and after approval of the improperly obtained settlement to disclose pertinent facts related to the existence of and amount of insurance coverage available to Plaintiffs. Anthony Ver Meer and other representatives of the Insurers had been asked numerous times by Plaintiffs and their representatives to provide information regarding the existence of other or additional coverage, but the Insurers provided false and inaccurate information to Plaintiffs, their attorneys, and the Escambia County, Florida probate court about the existence of and amounts of available coverage. Further, Anthony Ver Meer and all Defendants failed to take reasonable steps to correct these prior misrepresentations and disclose the fact of such additional coverage. In fact, Defendants intentionally made a decision to continue to withhold pertinent facts and information regarding such additional coverages, as well as their fraud on the Plaintiffs, their agents and attorneys, and the Escambia County, Florida probate court, which would have allowed Plaintiffs to seek and recover a more complete recovery for the claims related to the death of Khance Blackmon, had Ted Blackmon and Ruthie Blackmon been made aware of the additional $11,000,000.00 in coverage.

56.

Additionally, despite communicating at various times with Plaintiffs' agents, including Ward & Barnes, P.A. and the Medley Law Firm, and having multiple opportunities to disclose to those agents the full amount of additional coverage available to Plaintiffs, and despite being explicitly asked to provide that information and having provided false and incorrect information

about the amounts of available coverage, neither Anthony Ver Meer nor any other representative of the Insurers or Insureds took reasonable steps to disclose to Plaintiffs' agents the existence of the $11,000,000.00 in coverage available through policies issued to Bracken Construction Company, Inc., and in fact took affirmative steps to prevent Plaintiffs agents from obtaining that information.

57.

Had Ruthie Blackmon and Ted Blackmon or their agents been provided with accurate information regarding the existence of other policies, which they explicitly requested from Anthony Ver Meer, and which Anthony Ver Meer affirmatively represented did not exist, they would not have settled these claims, or they would have settled for a much greater amount that would have more fully reflected the extent of the losses suffered as a result of the automobile collision.

58.

In response to a Civil Remedy Notice separately filed by Plaintiffs Ted Blackmon and Ruthie Blackmon with the Florida Department of Financial Services regarding their each having been fraudulently induced into settlement of claims arising from the automobile accident, Defendants continued their pattern of deception by submitting an August 23, 2016 correspondence allegedly sent to Ted Blackmon. This correspondence asserted that Defendants notified Plaintiff Ted Blackmon of an additional $11,000,000.00 in available coverage through two policies issued to Bracken Construction Company, Inc. However, at that time, Defendants knew and/or should have known that the submittal of this letter was misleading and improper, as the correspondence was not previously received by Ted Blackmon (to whom it was allegedly addressed at an Arkansas address), nor were the facts therein ever communicated to the

Plaintiffs, and that a copy of the letter was never sent to Ms. Ruthie Blackmon as the succession representative.

59.

Significantly, despite the Insurers later producing and relying upon the alleged August 23, 2016 letter referred to in the preceding paragraph, allegedly sent to Ted Blackmon (which Defendants knew or should have known from tracking information was never received by Ted Blackmon, nor even sent to Ruthie Blackmon or Plaintiffs agents or attorneys), the Defendants through Anthony Ver Meer again intentionally misrepresented the amount of available insurance coverage to Plaintiffs and their attorneys at Ward & Barnes, P.A. stating that there was only $1,000,000.00 in coverage. Such response was in answer to the specific written request sent by such attorneys on or about February 24, 2017, for confirmation of available insurance coverages. These acts and misrepresentations by Defendants to Ward & Barnes, P.A. and Defendants' failure to provide a copy of or event note the existence of the alleged August 23, 2016 correspondence (which was never received by Plaintiffs, although it allegedly was sent six months prior) and/or otherwise advise Plaintiffs' attorneys of existence of the additional $11,000,000.00 in coverage for the automobile accident were done as part of a continuing pattern of deception by Defendants and their representatives or agents through use of false and fraudulent statements and conduct intended to deny Plaintiffs' proper and adequate legal representation and otherwise affect the Plaintiffs in their decision to settle the pending claims and cause harm to Plaintiffs, all of which was in violation of the laws of Louisiana and Florida, as well as other states where the Defendants' wrongful conduct occurred.

60.

Despite Defendants' prior misrepresentations regarding the amount of available insurance coverage, and Defendants' purported reliance on the aforementioned August 23, 2016 correspondence to have provided Plaintiffs with notice of additional coverage, Defendants failed to take any reasonable or meaningful steps to confirm the delivery, receipt, or non-receipt of such correspondence and facts therein contained. Further, despite being in contact with Plaintiffs and their agents on multiple occasions following the alleged mailing of the August 23, 2016 correspondence, Anthony Ver Meer and the Defendants repeatedly failed to communicate such information to either of the Plaintiffs or their agents prior to taking advantage of Plaintiffs' lack of knowledge of such important and material information regarding available insurance coverage prior to Defendants taking multiple steps to their advantage to obtain a very favorable settlement for Defendants for the claims arising from the automobile accident.

61.

Further, despite Defendants' aforementioned August 23, 2016 correspondence (which Plaintiffs never received) indicating that an individual by the name of Matt Willson would be designated and assigned by the Insurer as its claims adjuster and would thereafter be handling the claims involving Bracken Construction Company, Inc. and the additional $11,000,000.00 in coverage, neither Plaintiffs nor their attorneys ever received any communications from Matt Willson or any other representatives of Defendants regarding such claims or coverages. However, during the void of such communication regarding the additional coverages, Defendants, through their representative Anthony Ver Meer, sought to finalize a settlement with Plaintiffs on behalf of all Defendants, including Bracken Construction Company, Inc., which included the undisclosed additional coverages. All of these acts were under circumstances in

which the Defendants and their representative Anthony Ver Meer knew that the Plaintiffs and their agents were operating under their prior material misrepresentations regarding the lack of additional coverages being available and not understanding the full effect of this settlement and its alleged release of the undisclosed coverages.

62.

Under La. R.S. 22:1973(A), Anthony Ver Meer and the Insurers had an "affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both."

63.

Specifically, under La. R.S. 22:1973(B)(1), Anthony Ver Meer and the Insurers breached their duty to Plaintiffs by "[m]isrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue."

64.

Anthony Ver Meer and the Insurers breached the duties imposed under these Louisiana statutes and others laws of this State.

65.

For breach of the duty owed to Plaintiffs under La. R.S. 22:1973, Anthony Ver Meer and the Insurers "shall be liable for any damages sustained as a result of the breach." La. R.S. 22:1973(A).

66.

Additionally, Anthony Ver Meer and the Insurers are liable to Plaintiffs for the penalties imposed by La. R.S. 22:1973(C), which provides:

> In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed

against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.

### Fourth Cause of Action: Insurance Bad Faith and Deceptive Settlement Practices Involving Settlement of the Claims of Louisiana Resident Ted Blackmon Committed in the State of Louisiana

67.

Plaintiffs repeat and reiterate all of the foregoing allegations as if herein set forth, and in addition, allege:

68.

Defendants' actions directly and proximately led to Ted Blackmon accepting an offer by Anthony Ver Meer, the Insureds, and the Insurers to settle the claims related to his own personal injuries, emotional and mental distress, and other damages arising from the automobile collision for the amount of $17,000.00.

69.

Had Ted Blackmon been provided with accurate information regarding the existence of other policies of insurance, which he explicitly requested from Anthony Ver Meer, and which Anthony Ver Meer affirmatively represented did not exist, he would not have settled his claims, or he would have settled for a much greater amount that more fully reflected the extent of the personal injuries and other damages that he suffered as a result of the automobile collision.

70.

Anthony Ver Meer and the Insurers breached their duty under La. R.S. 22:1973(A) and (B) in failing to use good faith and fair dealing in settling the claims of Ted Blackmon. Specifically, under La. R.S. 22:1973(B)(1), Anthony Ver Meer and the Insurers breached their

duty to Ted Blackmon by "[m]isrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue."

71.

For breach of the duty owed to Ted Blackmon under La. R.S. 22:1973, Anthony Ver Meer and the Insurers "shall be liable for any damages sustained as a result of the breach," La. R.S. 22:1973(A), as well as penalties and all other damages provided under La. R.S. 22:1973(C).

**Fifth Cause of Action: Bad Faith Fraud Omissions and Material Misrepresentations, Omissions, and Silence Under Louisiana, Alabama, and Florida Law**

72.

Plaintiffs repeat and reiterate all of the foregoing allegations as if herein set forth, and in addition, allege:

73.

In addition to the above duties, Defendants each individually, and all Defendants collectively, owed Plaintiffs a duty not to misrepresent the facts regarding the existence and amounts of any and all insurance policies that provided coverage for Plaintiffs' injuries arising from the automobile collision.

74.

As a Louisiana licensed claims adjuster, Anthony Ver Meer owed a duty to Plaintiffs not to misrepresent facts regarding available coverage as imposed by the applicable standards of conduct, including La. R.S. 22:1674(F)(4), which provides: "No adjuster shall materially misrepresent to an insured or other interested party the terms and coverage of an insurance contract with intent and for the purpose of effecting settlement of a claim for loss or damage or

benefit under such contract on less favorable terms than those provided in and contemplated by the insurance contract."

75.

While Plaintiffs were residing in and present in the State of Louisiana, Defendants, individually and collectively through Anthony Ver Meer and others for whom they are legally responsible, made affirmative misrepresentations and omissions regarding the nature of the available liability coverages and the existence, extent, and amounts of available insurance coverages and policies known by them to be applicable to and providing coverage for Plaintiffs' injuries arising from the automobile collision alleged herein. These material misrepresentations and other acts were for the purpose of improperly inducing a settlement with Plaintiffs and having effect on pending claims in the states of Louisiana, Alabama, and Florida, thereby causing a breach of the legal duties owed by each Defendant individually and all Defendants collectively in each of the aforementioned states, and thereby giving rise to claims in equity, fraud, fraudulent misrepresentation, fraudulent inducement, and/or fraudulent deceit.

76.

Because C3 Construction Services, Inc. and Bracken Construction Company, Inc. share common officers, directors, and employees, each shared actual and constructive information and knowledge relating to the automobile collision, the nature and extent and type of claims possessed by Plaintiffs, the types of policies and amounts of coverage available for these claims, and the claims handling and negotiations and other acts as alleged herein of their various primary and excess insurers, including the concealment of the existence of certain available coverages and other false and material omissions and misrepresentation of such Insurers, which were made on behalf of and in furtherance of the interest of each and all of the Defendants in an effort to

fraudulently induce Plaintiffs to enter into a settlement for less than their full losses, and they are solidarily liable for all damages resulting from the facts as set forth in this Petition.

77.

C3 Construction Services, Inc. had knowledge of and was provided with copies of pertinent communications between Anthony Ver Meer and Plaintiffs regarding the limited coverage allegedly available to Plaintiffs, and therefore had actual knowledge that Anthony Ver Meer and the Insurers misrepresented and withheld information from Plaintiffs regarding the insurance policies and amounts of coverage available to Plaintiffs from Bracken Construction Company, Inc. As beneficiaries of Anthony Ver Meer's and the Insurers' fraudulent acts, misrepresentations, and omissions, C3 Construction Services, Inc. had a duty to prevent the commission of such acts and correct any misstatements. C3 Construction Services, Inc. violated its duty under the law and participated in the commission of fraud by its silence and by failing to take any steps to prevent the commission of those fraudulent acts, misrepresentations, and omissions.

78.

Through its shared officers, directors, and employees, and its otherwise intertwined relationship with C3 Construction Services, Inc., Bracken Construction Company, Inc. had actual knowledge that Anthony Ver Meer and the Insurers misrepresented and withheld information from Plaintiffs regarding the insurance policies and amounts of coverage that it could provide to Plaintiffs. As beneficiaries of Anthony Ver Meer and the Insurers' fraudulent acts, misrepresentations, and omissions, Bracken Construction Company, Inc. had a duty to prevent the commission of such acts and correct any misstatements. Bracken Construction Company, Inc. violated its duty under the law and participated in the commission of fraud by its silence and

by failing to take any steps to prevent the commission of those fraudulent acts, misrepresentations, and omissions.

79.

Defendants collectively conspired to misrepresent and withhold pertinent facts from the Plaintiffs regarding the available coverages for the purposes of preventing Plaintiffs from obtaining a more complete recovery for the losses they suffered as a result of the automobile collision and from making an informed decision. Defendants are therefore solidarily liable for all damages through the tort of civil conspiracy.

80.

As a result of their fraud, fraudulent misrepresentation, fraudulent inducement, fraudulent deceit, and/or civil conspiracy, under the laws of Louisiana, Alabama, and Florida, Defendants are liable to Plaintiffs for all resulting damages allowed under the law, as well as penalties, punitive damages and attorney fees.

**Sixth Cause of Action: Equitable Estoppel**
81.

Plaintiffs repeat and reiterate all of the foregoing allegations as if herein set forth, and in addition, allege:

82.

Defendants are estopped from alleging that any settlement agreements entered into by Plaintiffs bar the claims asserted in this Petition, as Plaintiffs were wrongfully induced to enter into those agreements by Defendants' fraud, bad faith, and other wrongful acts as set forth above and because many of the claims asserted herein arise from the fact of these settlements.

**Seventh Cause of Action: Unjust Enrichment**

83.

Plaintiffs repeat and reiterate all of the foregoing allegations as if herein set forth, and in addition, allege:

84.

Defendants have saved money by failing to pay the amounts rightfully owed to Plaintiffs under the insurance policies that were in effect and which provided coverage for the automobile collision, to the detriment of Plaintiffs. Defendants are under an obligation to follow rules and laws which required Defendants to provide notice of applicable policies to Plaintiffs and pay for damages caused by the Insureds. Rather than comply with these requirements, Defendants have breached their duties to Plaintiffs and have been unjustly enriched by the amount that Plaintiffs were rightfully owed from the policies in effect at the time of the automobile collision.

85.

Defendants are liable to Plaintiffs for the amounts by which Defendants have been unjustly enriched.

**Eighth Cause of Action: Detrimental Reliance and/or Promissory Estoppel**

86.

Plaintiffs repeat and reiterate all of the foregoing allegations as if herein set forth, and in addition, allege:

87.

By representing to Plaintiffs that the only available policy providing coverage for the automobile accident was the policy issued by The Charter Oak Fire Insurance Company,

Defendants should reasonably have expected to induce action of a substantial character on the part of Plaintiffs. Specifically, Defendants should reasonably have expected that Plaintiffs would rely upon Defendants' representations and agree to a settlement that represented less than full recovery for damages suffered by Plaintiffs in the automobile accident.

88.

If not for Defendants' promises, misrepresentations, and/or silence regarding the availability of other insurance policies offering coverage for the automobile collision, no reasonable Plaintiff nor these Plaintiffs would have agreed to settle their claims for an amount that represented less than full recovery.

89.

However, in reliance on Defendants' representations and to Plaintiffs' detriment, Plaintiffs agreed to settle their claims for an amount that represented less than full recovery.

90.

As a result of their reliance on Defendants' representations, Plaintiffs suffered damages in the amount that they would have been entitled to recover if they had not agreed to settle their claims.

91.

Under the theories of detrimental reliance and/or promissory estoppel, Defendants are liable to Plaintiffs for all damages suffered by Plaintiffs as a result of their reliance upon Defendants promises, representations, and/or silence.

**Ninth Cause of Action: Failure/Lack of Cause and/or Consideration**

92.

Plaintiffs repeat and reiterate all of the foregoing allegations as if herein set forth, and in addition, allege:

93.

Bracken Construction Company, Inc., Travelers Property Casualty Company of America, and Travelers Excess and Surplus Lines Company, through Anthony Ver Meer and others for whom they are legally responsible, materially misrepresented to Plaintiffs and their agents the terms and coverages of various insurance contracts with intent and for the purpose of effecting a settlement of Plaintiffs' claims. Such misrepresentations included, but are not limited to, the existence and amounts of coverages of the various insurance policies issued by them. Further, such Insurers obtained settlement under fraudulent pretenses with Plaintiffs, thereby causing a failure and/or lack of consent to such settlements and for any releases sought by Bracken Construction Company, Inc., Travelers Property Casualty Company of America, and Travelers Excess and Surplus Lines Company under any settlement agreements, receipts and releases, and/or checks allegedly signed by or relating to the claims of Ted Blackmon and/or Ruthie Blackmon for the settlements purported reached in this case.

94.

The misrepresentations referred to in the preceding paragraphs were made under circumstances in which the Defendants collectively knew that Plaintiffs were not informed or aware of involvement of the respondeat superior relationship or liability or availability of additional insurance coverages for Defendants Bracken Construction Company, Inc. through Travelers Property Casualty Company, and Travelers Excess and Surplus Lines Company.

Plaintiffs therefore did not and could not have intended to release those Defendants from liability to Plaintiffs for damages arising from the automobile collision.

95.

Any settlement agreements that purport to release any claims that Plaintiffs may have against Bracken Construction Company, Inc., Travelers Property Casualty Company, or Travelers Excess and Surplus Lines Company are null and void based on failure and/or lack of cause and/or consideration. Plaintiffs therefore retain any and all rights to pursue claims against those parties arising out of the facts in this Petition.

**Tenth Cause of Action: Insurance Bad Faith and Settlement Practices Regarding the Settlement of Claims of the Estate of Khance Blackmon Under Florida Law**

96.

Plaintiffs repeat and reiterate all of the foregoing allegations as if herein set forth, and in addition, allege:

97.

Under Florida Statutes § 624.155, Plaintiffs bring a cause of action against the Insurers for violations of their statutory duties:

(1) Any person may bring a civil action against an insurer when such person is damaged:

(a) By a violation of any of the following provisions by the insurer:

1. Section 626.9541(1)(i) . . . .

98.

Fla. Stat. § 626.9541(1)(i) states:

(i) *Unfair claim settlement practices.--*

\*        \*        \*

2. A material misrepresentation made to an insured or any other person having an interest in the proceeds payable under such contract or policy, for the purpose and with the intent of effecting settlement of such claims, loss, or damage under such contract or policy on less favorable terms than those provided in, and contemplated by, such contract or policy; or

3. Committing or performing with such frequency as to indicate a general business practice any of the following:

\*        \*        \*

b. Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

99.

Despite the language in Fla. Stat. § 626.9541(1)(i)(3), there is no requirement for Plaintiffs to establish that the acts committed by the Insurers were committed with such frequency as to indicate a "general business practice" when the claim is asserted via Fla. Stat. § 624.155. *Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co.*, 945 So. 2d 1216, 1231-34 (Fla. 2006).

100.

Plaintiffs provided 60 days' written notice to Insurers of these Florida statutory bad faith claims, as required by Florida Statutes § 624.155(3).

101.

The Insurers' actions that gave rise to these Florida statutory bad faith claims were willful, wanton, and malicious, and/or were in reckless disregard for the rights of Khance Blackmon and Ruthie Blackmon.

102.

For violation of these Florida statutory duties, the Insurers "shall be liable for damages, together with court costs and reasonable attorney's fees incurred by" Plaintiffs, as well as punitive damages. Fla. Stat. § 624.155(4) and (5).

**Eleventh Cause of Action: Insurance Bad Faith and Settlement Practices Regarding the Claims of Ted Blackmon Under Florida Law**

103.

Plaintiffs repeat and reiterate all of the foregoing allegations as if herein set forth, and in addition, allege:

104.

Defendants' actions directly and proximately led to Ted Blackmon accepting an offer by Anthony Ver Meer, the Insureds, and the Insurers to settle the claims related to his own personal injuries, emotional and mental distress, and other damages arising from the automobile collision for the amount of $17,000.00.

105.

Had Ted Blackmon been provided with accurate information regarding the existence of other policies, which he explicitly requested from Anthony Ver Meer, and which Anthony Ver Meer affirmatively represented did not exist, he would not have settled his claims, or he would have settled for a much greater amount that more fully reflected the extent of the personal injuries and other damages that he suffered as a result of the automobile collision.

106.

Anthony Ver Meer and the Insurers breached their duty under Florida Statutes § 624.155 in settling the claims of Ted Blackmon. Specifically, the misrepresentations, omissions, and

silence by Anthony Ver Meer and the Insurers described in this Petition represent violations of Fla. Stat. § 626.9541(1)(i)(2) and (3)(b).

107.

Plaintiffs provided 60 days' written notice to Insurers of these Florida statutory bad faith claims, as required by Florida Statutes § 624.155(3).

108.

The Insurers' actions that gave rise to these Florida statutory bad faith claims were willful, wanton, and malicious, and/or were in reckless disregard for the rights of Ted Blackmon.

109.

For breach of the duty owed to Ted Blackmon under Florida Statutes § 624.155, Anthony Ver Meer and the Insurers "shall be liable for damages, together with court costs and reasonable attorney's fees incurred by" Plaintiffs, as well as punitive damages. Fla. Stat. § 624.155(4) and (5).

**Twelfth Cause of Action: Rescission of Settlement Agreement Due to Error/Mistake of Fact**

110.

Plaintiffs repeat and reiterate all of the foregoing allegations as if herein set forth, and in addition, allege:

111.

Ted Blackmon and Ruthie Blackmon were mistaken as to the amount and types of coverage available for the automobile accident, including the fact that there were policies that offered coverage for the automobile accident other than the policy issued by The Charter Oak Fire Insurance Company to C3 Construction Services, Inc.

112.

Anthony Ver Meer and the Insurers had actual knowledge that Plaintiffs were mistaken as to the amount and types of coverage available, based on Plaintiffs' numerous requests for information regarding additional policies, as well as the requests from Plaintiffs' agents (including Ward & Barnes, P.A. and Medley Law Firm) for the Insurers to provide that same information.

113.

Due to these errors and mistakes of fact, of which Defendants were aware, Ted Blackmon is entitled to rescission of the agreement entered into by him for settlement of his claims for personal injuries that he suffered as a result of the automobile collision.

114.

Further, due to these errors and mistakes of fact, of which Defendants were aware, Plaintiffs are entitled to rescission of the agreement entered into by them for settlement of claims executed and resulting from the automobile collision.

**DAMAGES**

115.

As a direct and proximate result of the negligent and/or intentional acts, omissions, fraud and misrepresentation of the various Defendants, Plaintiffs were induced under false pretenses into settling their claims for less than their due and full compensation believing that there were no other insurance coverages and being denied access to the additional liability coverages in the amount of ELEVEN MILLION AND 00/100 DOLLARS ($11,000,000.00) as primary and

excess coverage for the acts of Defendants Bracken Construction Company, Inc. and Jhon Jaramillo.

116.

Further, as a direct and proximate result of the common scheme and acts in furtherance thereof, including the bad faith claims handling, negligence and/or intentional acts, omissions, fraud, and misrepresentation of the various Defendants, Plaintiffs have suffered additional legally recoverable damages and penalties in excess of what was owed to them for their injuries and losses suffered in the covered automobile accident alleged herein, thereby entitling Plaintiffs to seek penalties in an additional amount of up to two times the amount of their damages from the underlying claims and for the conduct of the defendants as set forth herein, plus other penalties, punitive damages, and attorney fees. Such additional damages would be due to Plaintiffs from any and all available insurance coverages afforded to each and any of the Defendants affording such coverages, including any GL policies, Errors and Omissions policies, or other insurance policies providing coverage and protections to the Defendants for the wrongful acts as alleged herein. Further, Plaintiffs would be also entitled to seek to the full extent that there are no coverages or the same are insufficient, such damages from each and all of the Defendants personally and in solido.

**WHEREFORE**, Plaintiffs pray that their First Superseding and Amending Complaint for Damages be filed as prayed for according to law, including Fed. R. Civ. P. 15(a)(1), and that after the expiration of all legal delays and due proceedings are had, there be a judgment rendered herein in their favor and against Defendants jointly, severally, and solidarily under the various applicable states' laws, including compensatory damages and penalties, as well punitive damages for Defendants' wrongful conduct in violation of various state insurance laws, and punitive

damages under Alabama law for the wrongful death of Khance Blackmon and for the future preservation of human life and as a deterrent to others to prevent similar wrongs or conduct, and any and all damages allowed under the circumstances or premises, together with legal interest thereon from the date of judicial demand until paid, for attorney's fees, all costs of these proceedings, and for any and all sums allowed under the law.

Respectfully submitted:

Simien & Simien, L.L.C.
Attorneys And Counselors At Law
7908 Wrenwood Boulevard
Baton Rouge, Louisiana 70809
(225) 932-9221; (225) 932-9286 (fax)


_____*s/Roy L. Bergeron, Jr.*_____
By:    Eulis Simien, Jr., Bar # 12077
       Jimmy Simien, Bar # 1598
       Mark W. Simien, Bar # 23303
       Roy L. Bergeron, Jr., Bar # 33726

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 23rd day of February, 2018, a copy of this pleading has been served on all known counsel of record via the Court's CM/ECF filing system and/or via email.

I also certify that a copy of this pleading has been served on the following Defendant at his last known address, pursuant to Fed. R. Civ. Proc. 5(b)(2)(C), in which event service is complete upon mailing:

**Anthony Ver Meer**
5741 Willow Lake Dr.
Hoover, Alabama 35244

_____*s/Roy L. Bergeron, Jr.*_____
Roy L. Bergeron, Jr.