UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

TED BLACKMON, ET AL.                                    CIVIL ACTION

VERSUS

BRACKEN CONSTRUCTION                                    NO.: 18-00142-BAJ-RLB
COMPANY, INC., ET AL.

<u>RULING AND ORDER</u>

Before the Court are two motions: a **Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 32)** filed by Defendant C3 Construction Services, Inc. and a **Motion to Dismiss for Failure to State a Claim (Doc. 28)** filed by Defendants Bracken Construction Company, Inc., Jhon Jaramillo, The Charter Oak Fire Insurance Company, Travelers Property Casualty Company of America, and Travelers Excess and Surplus Lines Company.[1] Plaintiffs Ted and Ruthie Blackmon filed oppositions, (Docs. 38, 40), and Defendants filed replies. (Docs. 47, 54). For the following reasons, the **Motions (Docs. 28, 32)** are **DENIED**.

I.  **BACKGROUND**

A head-on collision between a truck and a sedan on a two-lane highway claimed two lives. (Doc. 15, ¶21). This litigation arises from that collision and an insurer's efforts to settle the claims that resulted from it. (Doc. 15, ¶¶1-116).

The collision occurred on June 15, 2016 in Mobile County, Alabama. (Doc. 15, ¶14). That day, Jhon Jaramillo drove a Dodge Ram pickup truck between Louisiana

---

[1] Defendants Anthony Ver Meer and C3 Construction Services, Inc. join the Motion to Dismiss for Failure to State a Claim. (Docs. 30, 32).

1

and Alabama for his employers, C3 Construction Services, Inc. ("C3") and Bracken Construction Company ("Bracken"). (Doc. 15, ¶13). Around 3:55 P.M., Jaramillo's westbound Dodge Ram entered the eastbound lane and struck a Lexus sedan driven by Ted Blackmon and carrying two passengers, Shemika Robinson and Khance Blackmon. (Doc. 15, ¶19). The collision killed Khance Blackmon and Robinson; it injured Ted Blackmon. (Doc. 15, ¶19).

Defendant Anthony Ver Meer, a Louisiana-licensed claims adjuster, negotiated a settlement with Plaintiffs for claims "as the result of" the collision. (Doc. 15, ¶39). Plaintiffs sued to set aside that settlement on grounds of fraud and to recover damages against Bracken, C3, Jaramillo, Ver Meer, The Charter Oak Fire Insurance Company, Travelers Property Casualty Company of America, and Travelers Excess and Surplus Lines Company.[2] (Doc. 15, ¶1). Broadly, Plaintiffs allege that Defendants fraudulently induced Plaintiffs to settle tort claims arising from the collision by misrepresenting the amount of insurance coverage available. (Doc. 15, ¶¶35-36). Plaintiffs allege twelve claims:

(1) Negligence against Jaramillo, C3, and Bracken in causing Ted Blackmon's injuries (Doc. 15, ¶¶13-27);

(2) Negligence against Jaramillo, C3, and Bracken in causing Khance Blackmon's death (Doc. 15, ¶¶28-32);

---

[2] Defendants refer to The Charter Oak Fire Insurance Company, Travelers Property Casualty Company of America, and Travelers Excess and Surplus Lines Company collectively as "Travelers," and this Court does the same.

2

(3)     Bad faith settlement practices against Ver Meer and Travelers in settling claims belonging to Ruthie Blackmon, as representative of Khance Blackmon's estate (Doc. 15, ¶¶33-66);

(4)     Bad faith settlement practices against Ver Meer and Travelers in settling Ted Blackmon's claims (Doc. 15, ¶¶67-71);

(5)     Fraudulent misrepresentation against all Defendants (Doc. 15, ¶¶72-80);

(6)     Equitable estoppel against all Defendants (Doc. 15, ¶¶81-82);

(7)     Unjust enrichment against all Defendants (Doc. 15, ¶¶83-85);

(8)     Promissory estoppel against all Defendants (Doc. 15, ¶¶86-91);

(9)     Failure of consideration against all Defendants (Doc. 15, ¶¶92-95);

(10)     Bad faith violation of Florida statutes against Travelers in settling Khance Blackmon's claims (Doc. 15, ¶¶96-102);

(11)     Bad faith violation of Florida statutes against Travelers in settling Ted Blackmon's claims (Doc. 15, ¶¶103-109); and

(12)     Rescission of the settlements. (Doc. 15, ¶¶110-114).

Defendants argue that Plaintiffs fail to state claims upon which relief can be granted, and move to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Doc. 28). C3 moves to dismiss separately, contending the Court lacks personal jurisdiction over it. (Doc. 32). The Court addresses each motion in turn.

## II. DISCUSSION

### A. Personal Jurisdiction

C3 moves the Court to dismiss Plaintiffs' claims for lack of personal jurisdiction, contending the Court lacks jurisdiction over it under specific and general jurisdiction theories. (Doc. 32).

#### 1. Legal Standard

Federal Rule of Civil Procedure 12(b)(2) permits the Court to dismiss a complaint that asserts claims against a defendant over whom the Court lacks personal jurisdiction. Plaintiffs seek to invoke the power of the Court and thus must show that the Court has personal jurisdiction over C3. *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)).

Because C3 disputes the basis for personal jurisdiction, the Court "may receive interrogatories, depositions, or 'any combination of the recognized methods of discovery' to help it resolve the jurisdictional issue." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008) (quoting *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)). The parties have submitted, and the Court has considered, the depositions of Chris Bracken, Jhon Jaramillo, and Benjamin Wadlington. (Docs. 40-1, 40-2, 40-3).

#### 2. Constitutional Requirements

The Court has personal jurisdiction over C3 if Louisiana's long-arm statute confers personal jurisdiction over it, and the Court's exercise of jurisdiction complies

4

with the Due Process Clause of the Fourteenth Amendment. *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 488 (5th Cir. 2018). Because Louisiana's long-arm statute extends jurisdiction to the limits of due process, the Court need only determine whether its exercise of jurisdiction satisfies due process. LA. REV. STAT. § 13:3201(B); *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999).

To satisfy due process, C3 must have "minimum contacts" with Louisiana, and the Court's exercise of jurisdiction "must not infringe on 'traditional notions of fair play and substantial justice.'" *Trois*, 882 F.3d at 488-89 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

C3 argues that it lacks minimum contacts with Louisiana under a general jurisdiction theory because it is a Texas corporation with a principal place of business in Texas and no meaningful ties to Louisiana. (Doc. 32-1, p.3). And C3 argues that it lacks minimum contacts under a specific jurisdiction theory because Plaintiffs' claims against C3 arise from a collision that occurred in Alabama—not Louisiana. (Doc. 32-1, pp.7-8). Plaintiffs rejoin that the Court has personal jurisdiction over C3 on an alter-ego theory. (Doc. 40, p.3). Plaintiffs reason that, because Bracken is C3's alter-ego, the Court should impute Bracken's waiver of objections to personal jurisdiction to C3. (Doc. 40, p.3).

### 3. Waiver

A defendant waives an objection to personal jurisdiction if it files a responsive pleading that does not object to personal jurisdiction. FED. R. CIV. P. 12(h). Bracken waived any objection to personal jurisdiction because it filed a Rule 12 motion that

5

did not raise an objection to personal jurisdiction. (Doc. 28). So the Court addresses whether Bracken's waiver should be imputed to C3 under an alter-ego theory. *See Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 654 (5th Cir. 2002) ("[A]n individual alter-ego of a corporation that has waived personal jurisdiction cannot subsequently attempt to negate that waiver.").

### 4. Alter-Ego

"In Louisiana, courts may impute contacts between two entities under either an alter-ego or agency theory." *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 753 F.3d 521, 546 (5th Cir. 2014). If the Court has personal jurisdiction over an entity, it also has personal jurisdiction over that entity's alter-egos. *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 586 (5th Cir. 2010). The alter-ego test for personal jurisdiction "is less stringent than that for liability." *Stuart v. Spademan*, 772 F.2d 1185, 1198 n.2 (5th Cir. 1985). Plaintiffs are the proponents of the alter-ego theory, so Plaintiffs bear the burden of showing that C3 is Bracken's alter-ego. *Dickson Marine*, 179 F.3d at 338.

Louisiana law directs courts to consider various factors to determine whether one entity is the alter-ego of another:

> (1) Corporations with identity or substantial identity of ownership, that is, ownership of sufficient stock to give actual working control; (2) common directors or officers; (3) unified administrative control of corporations whose business functions are similar or supplementary; (4) directors and officers of one corporation act independently in the interest of that corporation; (5) corporation financing another corporation; (6) inadequate capitalization ("thin incorporation"); (7) corporation causing the incorporation of another affiliated corporation; (8) corporation paying the salaries and other expenses or losses of another corporation; (9) receiving no business other than that given to it by its affiliated

6

corporations; (10) corporation using the property of another corporation as its own; (11) noncompliance with corporate formalities; (12) common employees; (13) services rendered by the employees of one corporation on behalf of another corporation; (14) common offices; (15) centralized accounting; (16) undocumented transfers of funds between corporations; (17) unclear allocation of profits and losses between corporations; and (18) excessive fragmentation of a single enterprise into separate corporations.

*Green v. Champion Ins. Co.*, 577 So. 2d 249, 257-58 (La. Ct. App. 1991).

Applying those factors here, the Court finds that C3 is Bracken's alter-ego. *Green*, 577 So. 2d at 257-58. Because C3 is Bracken's alter-ego, the Court concludes that Bracken's waiver of personal jurisdiction should be imputed to C3. *Patin*, 294 F.3d at 654.

The following facts support a finding that C3 is Bracken's alter-ego: **(1)** Chris Bracken, Jeff Bracken, and Ben Wadlington were the original "partner members" of C3, (Doc. 40-1, p.45), **(2)** Ben Wadlington is the current president of C3 and Bracken, (Doc. 40-1, p.50), **(3)** C3's "business function" supplements Bracken's business because C3 was created to "provide skilled labor force to Bracken when needed," (Doc. 40-1, p.16), **(4)** at the time of the collision, accounting for both entities was centralized and handled by a single person, Teresa Pope, (Doc. 40-3, p.9), **(5)** at the time of the collision, C3 and Bracken shared employees, (Doc. 40-1, p.18), **(6)** C3 and Bracken share offices, (Doc. 40-3, p.10), **(7)** C3 employees use a Bracken email address, (Doc. 40-3, p.11), **(8)** C3 and Bracken share a policy manual, (Doc. 40-3, p.22), **(9)** Bracken paid C3's expenses for C3's five-year "rollout" period, (Doc. 40-1, pp.27-28), **(10)** at the time of the collision, C3 operated rent-free inside a Bracken-owned building, (Doc. 40-1, p.26), **(11)** C3 and Bracken jointly invoiced customers, (Doc. 40-1, p.47), **(12)** C3

7

and Bracken provide health benefits to employees under the same group health insurance policy, (Doc. 40-3, pp.13-14).

C3 insists that it is not Bracken's alter-ego because the entities have separate bank accounts, credit cards, and phone numbers. (Doc. 54, p.4). It invokes *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579 (5th Cir. 2010), as purported support for its argument. (Doc. 54, p.3). *Jackson* presented the question whether a federal court in Louisiana could exercise personal jurisdiction over an Italian entity because that entity was the alter-ego of another entity subject to the court's personal jurisdiction. *Id.* at 587. Although the entities shared offices, phone numbers, and officers and directors, the United States Court of Appeals for the Fifth Circuit ruled that the entities were not alter-egos under Louisiana law. *Id.* The Fifth Circuit emphasized that the entities kept separate books, and that there was no evidence that one entity paid the salaries of the other's employees. *Id.*

*Jackson* is instructive but not controlling. C3 and Bracken—unlike the *Jackson* entities—shared an accounting department. (Doc. 40-3, p.9). And Plaintiffs here, unlike the proponents of alter-ego-based jurisdiction in *Jackson*, offer evidence that Bracken paid the salary of C3 employees. (Doc. 40-1, p.18). This is not a case where some factors support imputation and some do not; it is a case where nearly all factors support imputation. *Cf. Jackson*, 615 F.3d at 588. In that regard, the alter-ego relationship in this case resembles the one the Fifth Circuit examined in *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 753 F.3d 521 (5th Cir. 2014) ("*Chinese Drywall*").

In *Chinese Drywall*, the plaintiffs argued that a Louisiana federal court had personal jurisdiction over a nonresident defendant on an alter-ego theory. *Id.* at 546. The district court agreed, and the defendants appealed. *Id.* On appeal, the defendants challenged personal jurisdiction and—like C3 here—invoked *Jackson* in support. *Id.* at 546. But the Fifth Circuit distinguished *Jackson*: the *Chinese Drywall* plaintiffs had offered evidence that one entity paid the other's employees; the *Jackson* plaintiffs had not. *Id.* at 547. The Fifth Circuit thus affirmed the district court's decision to exercise jurisdiction on an alter-ego theory, noting that "many of the factors that *Jackson* recognized as favoring imputation are present [.]" *Id.* at 547. Those same factors support imputation here. *Id.*

Plaintiffs offer evidence that triggers the factors that favored imputation in *Jackson*, plus evidence that Bracken paid C3's employees. (Docs. 40-1, 40-3). Plaintiffs have thus "overcome by clear evidence" the "presumption of corporate separateness," and shown that C3 is Bracken's alter-ego. *Dickson Marine*, 179 F.3d at 338. Because C3 is Bracken's alter-ego, Bracken's waiver of objections to personal jurisdiction is imputed to C3. *Patin*, 294 F.3d at 654. Accordingly, the Court has personal jurisdiction over C3, and must deny C3's Motion to Dismiss. (Doc. 32).

**B.    Failure to State a Claim**

Defendants argue that Plaintiffs fail to state a claim and offer three reasons in support. (Doc. 28). First: Plaintiffs cannot rescind the releases they signed without returning the consideration Defendants paid them. (Doc. 28-1, p.6). Second: Plaintiffs cannot plead a plausible fraud claim because Plaintiffs signed releases with "no

9

reliance" clauses. (Doc. 28-1, p.12). Third: Plaintiffs' claims are barred by res judicata. (Doc. 28-1, p.15).

### 1. Legal Standard

To overcome Defendants' Motion to Dismiss, Plaintiffs must plead a plausible claim for relief. *Romero v. City of Grapevine, Tex.*, 888 F.3d 170, 176 (5th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is plausible if it is pleaded with factual content that allows the Court to reasonably infer that Defendants are liable for the misconduct alleged. *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017) (citing *Iqbal*, 556 U.S. at 678). The Court accepts as true the Complaint's well-pleaded facts and views those facts in the light most favorable to Plaintiffs. *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 513 (5th Cir. 2018).

### 2. Documents Considered

Defendants attach as exhibits releases that Plaintiffs signed, (Doc. 28-2, pp.31-32, 35-36), and a Florida state-court order approving the settlement of claims belonging to Khance Blackmon's estate. (Doc. 28-2, p.33). In response, Plaintiffs ask the Court to ignore the documents because they are outside the Complaint. (Doc. 38, p.2).

A motion to dismiss "typically cannot rely on evidence outside the complaint." *C&C Inv. Props., L.L.C. v. Trustmark Nat'l Bank*, 838 F.3d 655, 660 (5th Cir. 2016). But the Court "may consider documents attached to the motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims." *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 (5th Cir. 2012).

The Court turns first to the releases. (Doc. 28-2, pp.31-32, 35-36). Plaintiffs' Complaint refers to them, (Doc. 15, ¶¶48, 68), and they are central to Plaintiffs' claims because Plaintiffs allege that Defendants fraudulently induced Plaintiffs to sign them. (Doc. 15, ¶¶33-71). Review of the Florida state-court order requires the same result. (Doc. 28-2, p.33). The Court can consider the order because it is referenced in Plaintiffs' Complaint, (Doc. 15, ¶¶30, 50), and the allegation that Defendants defrauded that court is central to Plaintiffs' fraudulent misrepresentation claims. (Doc. 15, ¶55).

Because the settlement agreements and the Florida state-court order are referenced in and central to Plaintiffs' Complaint, the Court will consider them in resolving Defendants' Motion to Dismiss. *Gines*, 699 F.3d at 820.

### 3. Choice of Law

Before turning to the merits, the Court considers which state's law applies to which issues. *See Marchesani v. Pellerin-Minor Corp.*, 269 F.3d 481, 487 (5th Cir. 2001). The issues are (1) the tender-back requirement, (2) contractual interpretation, and (3) res judicata. The parties assert that Florida or Louisiana law governs, but they do not explain why. (Doc. 28-1, p.6; Doc. 38, p.4). Because no party analyzes choice of law, the Court does so here.

The Court's jurisdiction is based on diversity of citizenship, so the Court applies Louisiana's substantive law. *Boyett v. Redland Ins. Co.*, 741 F.3d 604, 607 (5th Cir. 2014) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Because Louisiana's choice-of-law rules are substantive, the Court applies them here. *Weber*

*v. PACT XPP Tech., AG*, 811 F.3d 758, 770 (5th Cir. 2016) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941)). The first step under Louisiana's choice-of-law rules is to determine whether the laws of two or more states conflict. *Lonzo v. Lonzo*, 2017-0549, p.12 (La. Ct. App. 4th Cir. 11/15/17); 231 So. 3d 957, 966. If the laws do not conflict, the Court applies forum law. *Am. Elec. Power Co. v. Affiliated FM Ins. Co.*, 556 F.3d 282, 285 n.2 (5th Cir. 2009).

As for the tender-back requirement, the laws of Louisiana and Florida are in accord. The tender-back requirement holds that a plaintiff cannot sue to avoid a settlement until she returns the consideration she received under the settlement. *See Bogy v. Ford Motor Co.*, 538 F.3d 352, 355 (5th Cir. 2008). Both Louisiana and Florida require tender-back under most circumstances. *Compare Harrison v. First Nat'l Life Ins. Co.*, 179 So. 123, 126 (La. Ct. App. 1938) (Louisiana law) *with Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1279 (11th Cir. 2004) (Florida law). Because the laws of Louisiana and Florida do not conflict, the Court applies Louisiana law to the tender-back issue. *Am. Elec. Power Co.*, 556 F.3d at 285 n.2.

The laws of Louisiana and Florida are also in accord on contractual interpretation. *Compare Cadwallader v. Allstate Ins. Co.*, 2002-1637, p. 4 (La. 6/27/03); 848 So. 2d 577, 580 (Louisiana law) *with Feldman v. Kritch*, 824 So. 2d 274, 277 (Fla. 4th Dist. Ct. App. 2002) (Florida law); *see also Sport Tech, Inc. v. SFI MFG., Inc.*, 36,413 (La. Ct. App. 2d Cir. 12/20/02); 838 So. 2d 807, 816, (noting the similarity between Louisiana and Florida contractual-interpretation law), *writ denied*, 2003-0526 (La. 4/25/03); 842 So. 2d 405. Because the laws of Louisiana and Florida do not

12

conflict on the issue, the Court applies Louisiana's law of contractual interpretation. *Am. Elec. Power Co.*, 556 F.3d at 285 n.2.

The choice-of-law rules for res judicata differ. *See Hogue v. Royse City, Tex.*, 939 F.2d 1249, 1252 (5th Cir. 1991). The Court need not search for a state-law conflict on the issue; instead, the Court gives the Florida state-court order the same preclusive effect it would be given by a Florida court applying Florida law. *Hogue*, 939 F.2d at 1252.

### 4. Tender-Back

Defendants argue that Plaintiffs' Complaint should be dismissed because Plaintiffs signed releases covering the claims they assert. (Doc. 28-1, p.6). Plaintiffs cannot end-run those releases, Defendants reason, because Plaintiffs have not returned the consideration they received. (Doc. 28-1, p.6). Plaintiffs rejoin that tender-back is not required to rescind a settlement. (Doc. 38, pp.3-4).[3]

One line of Louisiana authority holds that a plaintiff suing to undo a settlement must "allege the return or tender of the consideration." *Harrison*, 179 So. at 126. But another line of authority suggests that tender-back is not required when a plaintiff seeks to rescind a settlement on grounds of fraud, as Plaintiffs aim to do here. *See, e.g., Patrick v. Dupont*, 2014-0810, pp. 4-5 (La. App. 1st Cir. 3/11/15); 2015 WL 1128669, at *4; *Contogouris v. Westpac Resources*, 856 F. Supp. 2d 846, 853 (E.D. La. 2012).

---

[3] Plaintiffs do not allege that they have returned the consideration they received to settle their claims arising from the collision. (Doc. 15, ¶¶1-116).

13

Defendants have not shown that the former line of authority should govern the sufficiency of Plaintiffs' pleading. Given the stage of the case and the split of authority, the Court declines to dismiss Plaintiffs' claims for failure to allege tender-back and as covered by the releases.

5. **"No Reliance" Clauses**

Defendants argue that the Court should dismiss Plaintiffs' fraudulent misrepresentation claims because the releases Plaintiffs signed contain "no reliance" clauses, which preclude Plaintiffs from pleading the reasonable reliance element of a fraudulent misrepresentation claim.[4] (Doc. 28-1, p.12). Plaintiffs counter that the "no reliance" clauses are limited in scope and do not extend to misrepresentations about insurance coverage. (Doc. 38, p.6). The Court agrees.

The "no reliance" clauses in Plaintiffs' releases are identical and provide, in relevant part:

> Releasor(s) agree that no promise has been offered except as set forth in this Release; that this Release is executed without reliance upon any statement or representation by the Releasees, or their representatives, **concerning the nature and extent of the injuries and/or damages and/or legal liability**; and that the Releasor(s) is/are of legal age, legally competent to execute this release and accept(s) full responsibility therefore [*sic*].

(Doc. 28-2, pp.17, 35) (emphasis added).

Assuming the "no reliance" clauses are enforceable, they are of no help to Defendants here. The clauses bar Plaintiffs from pleading the reasonable reliance element of a fraudulent misrepresentation claim based on alleged misrepresentations

---

[4] Defendants do not identify the claims to which they contend the "no reliance" clauses apply.

about "the nature and extent of the injuries," "damages," or "legal liability." (Doc. 28-2, pp.17, 35). Plaintiffs' fraudulent misrepresentation claim is based on misrepresentations Plaintiffs allege Ver Meer made about insurance coverage—not about "the nature and extent of the injuries," "damages," or "legal liability." (Doc. 15, ¶¶72-80). Because the "no reliance" clauses do not cover the types of misrepresentations Plaintiffs allege here, and because Defendants have not explained how the "no reliance" clauses might operate to bar Plaintiffs' statutory claims, Defendants are not entitled to dismissal of any of Plaintiffs' claims on this basis.

### 6. Res Judicata

Defendants next invoke res judicata and argue that a Florida state-court order approving the settlement of claims belonging to the estate of Khance Blackmon bars the claims Plaintiffs assert here. (Doc. 28-1, p.15). The order is entitled "Order Approving and Allocating Insurance Settlement," and the Circuit Court for Escambia County, Florida, Probate Division, entered it on October 19, 2017. (Doc. 28-2, p.33). As its label suggests, the order approves the settlement of claims belonging to Khance Blackmon's estate and arising from the June 15, 2016 collision. (Doc. 28-2, p. 33). Plaintiffs offer two arguments in response: first—res judicata should not be raised by Rule 12 motion; second—Defendants fail to prove the elements of res judicata. (Doc. 38, p.9).

Res judicata should ordinarily be pleaded as an affirmative defense, not raised in a motion to dismiss. *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 n.2

(5th Cir. 2005). But the Fifth Circuit has carved out an exception: a court may enter a Rule 12 dismissal on res judicata grounds if the elements of res judicata are apparent from the face of the pleadings and facts that may be judicially noticed. *Kansa Reinsurance Co. v. Congressional Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994). The Court may take judicial notice of the Florida state-court order Defendants offer here because it is a publicly-available order entered in a prior court case. *See Hall v. Hodgkins*, 305 F. App'x 224, 226 (5th Cir. 2008) (unpublished but persuasive) (resolving res judicata-based Rule 12 motion by taking judicial notice of pleadings filed in prior suit). Plaintiffs' first argument fails to persuade, so the Court turns to their second—whether Defendants have established the elements of res judicata.

Under Florida law, res judicata has five elements: "(1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; (4) identity of the quality of the persons for or against whom the claim is made; and (5) the original claim was disposed on the merits." *Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1074 (11th Cir. 2013).[5] Res judicata "does not bar a claim that was not in existence at the time of the original action unless the facts underlying the claim were actually raised in that action." *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1299 (11th Cir. 2001).

---

[5] The Court applies Florida's res judicata law because the relevant order was rendered by a Florida court and the Court must give it the same preclusive effect as would a Florida court applying Florida law. *Hogue*, 939 F.2d at 1252.

16

Defendants have not shown that res judicata merits dismissal at this Rule 12 stage. Plaintiffs allege that the facts they now marshal in support of their fraud and bad-faith claims were unavailable to them at the time the Florida state court entered its order approving the settlement. (Doc. 15, ¶50). Because those facts were unavailable to Plaintiffs when the Florida state court entered its order, Plaintiffs could not have brought the fraud and bad-faith claims they bring here, and the claims were not "in existence" for res judicata purposes. *In re Piper Aircraft*, 244 F.3d at 1299. Because those claims did not "exist" when the Florida state court entered its order, the Court declines to dismiss Plaintiffs' claims on res judicata grounds. *Piper Aircraft Corp.*, 244 F.3d at 1299.

III. **CONCLUSION**

Accordingly,

**IT IS ORDERED** that the **Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 32) is DENIED**.

**IT IS FURTHER ORDERED** that the **Motion to Dismiss for Failure to State a Claim (Doc. 28) is DENIED**.

Baton Rouge, Louisiana, this 14th day of September, 2018.

JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA