UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

TED BLACKMON ET AL.                                    CIVIL ACTION

VERSUS

BRACKEN CONSTRUCTION                                   NO.: 18-142-BAJ-RLB
COMPANY ET AL.

## RULING AND ORDER

Before the Court is the **Motion for Partial Summary Judgment (Doc. 136)** filed by Plaintiffs Ted and Ruthie Blackmon. For the reasons that follow, the **Motion (Doc. 136)** is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

The Blackmons executed settlements resolving claims arising from a car accident. They contend that Defendants fraudulently induced them to execute the settlements. At issue is whether provisions in those settlements require the Blackmons to indemnify Defendants[1] against the Blackmons' fraud and bad-faith claims.[2]

---

[1] The Court refers to The Charter Oak Fire Insurance Company, Travelers Property Casualty Company of America, Travelers Excess and Surplus Lines Company, and Anthony Ver Meer collectively as the "Insurer Defendants" and C3 Construction Services, Inc., Bracken Construction Company, Inc., and Jhon Jaramillo collectively as the "Insured Defendants."

[2] The Court bifurcated trial and discovery of the fraud and bad-faith claims (Phase I) from trial and discovery of the collision-related negligence claims (Phase II). (Doc. 139). This Ruling and Order is limited to the Blackmons' obligations under the settlements with respect to the fraud and bad-faith claims.

1

A head-on collision between a truck and a sedan on a two-lane highway claimed two lives. (Doc. 79). This suit arises from that collision and an insurer's efforts to settle the claims that resulted from it. (*Id*).

The collision occurred on June 15, 2016 near Mobile, Alabama. (Docs. 136-2 at ¶ 1; 143-1 at ¶ 1; 145-1 at ¶ 1). That day, Jhon Jaramillo drove a Dodge Ram pickup truck between Louisiana and Alabama for his employers, C3 Construction Services and Bracken Construction Company. (*Id.*). Around 3:55 P.M., Jaramillo's westbound Dodge Ram entered the eastbound lane and struck a Lexus sedan driven by Ted Blackmon and carrying two passengers, Shemika Robinson and Khance Blackmon. (*Id.*). The collision killed Khance Blackmon and Robinson; it injured Ted Blackmon. (Docs. 136-2 at ¶ 2; 143-1 at ¶ 2; 145-1 at ¶ 2).

Less than six months later, Ted Blackmon executed a settlement releasing his claims for $20,563.26. (Docs. 136-2 at ¶ 3; 143-1 at ¶ 3; 145-1 at ¶ 3). Ruthie Blackmon, as the representative for Khance Blackmon's estate, executed a settlement releasing the estate's claims for $650,000. (Docs. 136-2 at ¶ 4; 143-1 at ¶ 4; 145-1 at ¶ 4). Other than the amounts paid in settlement, the terms of the settlements are the same. (Docs. 136-5, 136-6).

The first paragraph of the settlements obliges the Blackmons to

> release and forever discharge Jhon Evelio Jaramillo, C3 Construction Services, Inc., Bracken Construction Company, Inc., The Charter Oak Fire Insurance Company and Travelers Property Casualty Company of America, and (his/her/their/its) successors and assigns (hereafter "Releasee(s)") and any other person, corporation, association or partnership allegedly responsible for injuries to the person and/or property of the Releasors, and any other claims, demands, causes of

2

> action, damages, losses, judgments, actions, or lawsuits, known or unknown, anticipated or unanticipated against Releasee(s) *as the result of* an accident, incident, casualty or event (the "Incident") which occurred or is alleged to have occurred on June 15, 2016 on US Hwy 9 in Mobile County, AL.

(Docs. 136-5 at p. 1; 136-6 at p. 1) (emphasis added).

In the third paragraph, the Blackmons acknowledge that the "payment is full and final settlement of all claims for injuries and other damages incurred *as a result of* the Incident." (Docs. 136-5 at p. 1; 136-6 at p. 1) (emphasis added).

The fourth paragraph contains an indemnification provision, which obliges the Blackmons to

> indemnify the Releasee(s) in the event that Releasee(s) are obligated to make payment resulting from other lawsuits, liens or claims, asserted by any person or entity *as a result of* the Incident and for the cost incurred in defending same.

(Docs. 136-5 at p. 1; 136-6 at p. 1) (emphasis added).

The seventh paragraph contains another indemnification provision, which obliges the Blackmons to

> hold harmless, indemnify, and defend Releasee(s) with respect to *any and all other claims* that may be presented by Releasor(s), Medicare, and/or any other party acting on Releasor(s)' or Medicare's behalf, including, but not limited to, administrative or civil fines, penalties, and interest, as well as any damages that arise out of, result from, and/or occur as a consequence of any adverse administrative of legal actions, up to and including the loss of Releasor(s)' future Medicare benefits and/or Medicare eligibility.

(Docs. 136-5 at p. 2; 136-6 at p. 2) (emphasis added).

Eighteen months after the collision, the Blackmons sued (1) the Insurer Defendants to rescind the settlements and recover damages for fraud and bad faith and (2) the Insured Defendants for negligence. (Doc. 1-2). The fraud, rescission, and bad-faith claims center on the allegation that the Insurer Defendants fraudulently induced the Blackmons to settle their claims arising from the collision by misrepresenting the amount of available insurance coverage. (Doc. 79). The negligence claims center on the allegation that the Insured Defendants caused the collision. (*Id.*).

Defendants responded by tendering the suit to Ruthie Blackmon for defense and indemnity.[3] (Doc. 136-9) (Insurer Defendants); (Doc. 143-2) (Insured Defendants). In letters to Ruthie Blackmon, Defendants pointed to the seventh paragraph of the settlements and demanded that Ruthie Blackmon provide them defense and indemnity. (Docs. 136-9, 143-2). She declined. (Doc. 143-3).

Now, the Blackmons move for partial summary judgment on the indemnity issue. (Doc. 136). They ask the Court to find that the settlements do not require them to defend or indemnify Defendants against their fraud and bad-faith claims. (*Id.*). They make three arguments. (Doc. 136-1). First, they argue that the settlements do not cover their fraud claims because those claims had not accrued when the settlements were executed. (*Id.*). Second, they argue that the indemnification provision only applies to claims resulting from the collision, and their fraud and bad-

---

[3] Defendants invoked the settlements in their affirmative defenses. (Doc. 97 at p. 36) (C3 Construction); (Doc. 94 at p. 39) (Charter Oak and Travelers); (Doc. 95 at p. 32) (Ver Meer); (Doc. 98 at p. 13) (Bracken Construction).

4

faith claims do not result from the collision. (*Id.*). Third, they argue that the language of the settlements does not reflect the requisite intent to indemnify Defendants for fraud. (*Id.*).

Defendants oppose.[4] (Docs. 143, 145). They argue that the indemnification provisions mean what they say: the Blackmons must defend and indemnify Defendants for "any and all other claims that may be presented[.]" (*Id.*). They label the Blackmons' interpretation "unreasonably narrow" and urge the Court not to "rewrite" the settlements. (*Id.*).

## II. LEGAL STANDARD

The Court will enter partial summary judgment in the Blackmons' favor if they show that there is no genuine dispute as to any material fact and that they are entitled to judgment on the indemnity issue as a matter of law. *See* FED. R. CIV. P. 56(a). In deciding if the Blackmons have made that showing, the Court views facts and draws reasonable inferences in Defendants' favor. *See Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 513 (5th Cir. 2018)

## III. CHOICE OF LAW

The Court's jurisdiction is based on diversity of citizenship, so the Court applies Louisiana substantive law. *See Boyett v. Redland Ins. Co.*, 741 F.3d 604, 607 (5th Cir. 2014) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Because

---

[4] Although the Insurer Defendants and the Insured Defendants filed separate opposition briefs, they make the same arguments. (Docs. 143, 145).

Louisiana choice-of-law rules are substantive, the Court applies them here. *See Weber v. PACT XPP Tech., AG*, 811 F.3d 758, 770 (5th Cir. 2016) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941)). The first step under Louisiana choice-of-law rules is to determine whether the laws of two or more states conflict. *Lonzo v. Lonzo*, 2017-0549, p.12 (La. Ct. App. 4th Cir. 11/15/17); 231 So. 3d 957, 966. If the laws do not conflict, the Court applies forum law. *See Am. Elec. Power Co. v. Affiliated FM Ins. Co.*, 556 F.3d 282, 285 n.2 (5th Cir. 2009).

With respect to contract interpretation, the laws of Louisiana and Florida are in accord.[5] *Compare Cadwallader v. Allstate Ins. Co.*, 2002-1637, p. 4 (La. 6/27/03); 848 So. 2d 577, 580 *with Feldman v. Kritch*, 824 So. 2d 274, 277 (Fla. 4th Dist. Ct. App. 2002). The Court thus applies Louisiana law. *See Am. Elec. Power Co.*, 556 F.3d at 285 n.2.

## IV. DISCUSSION

Settlements are "compromises" under Louisiana law. *See* LA. CIV. CODE art. 3071. Compromises are contracts that "settle a dispute or an uncertainty concerning an obligation or other legal relationship." *Id.* They settle, however, "only those difference[s] that the parties clearly intended to settle, including the necessary consequences of what they express." LA. CIV. CODE art. 3076. To determine what the parties "clearly intended to settle," the Court turns to the language of the settlements

---

[5] The parties offer Louisiana and Florida as the only two states whose law could apply to the contract-interpretation issue. (Doc. 136-1, 143, 145).

and applies general rules of contract interpretation. *See Maggio v. Parker*, 2017-1112, p. 4 (La. 6/27/18); 250 So. 3d 874, 878.

The settlements use inconsistent language. (Docs. 136-5; 136-6) So it is not clear what differences the parties "clearly intended" to settle. (*Id.*). Consider paragraph one. (Docs. 136-5 at p. 1; 136-6 at p. 1). It reflects an intent to settle only those claims that allege damages caused solely by the collision. (*Id.*). Paragraphs three and four, by contrast, reflect an intent to effectuate a broader settlement—one that compromises claims alleging damages caused, in whole or in part, by the collision. (*Id.*). And paragraph seven sweeps even more broadly: it reflects an intent to resolve any and all future claims the Blackmons may bring against Defendants, no matter how unrelated to the collision. (Docs. 136-5 at p. 2; 136-6 at p. 2).

To determine the "clear intent" of the parties, and thus the scope of the settlements, the Court considers each relevant paragraph. *See* LA. CIV. CODE art. 2050.

### A.   Paragraph One

The first indicator of the "differences" the parties "clearly intended" to settle is the language in the first paragraph of the settlements. *See* LA. CIV. CODE art. 3076. That paragraph states that the Blackmons release any claims against Defendants "*as the result of*" the collision.[6] (Docs. 136-5 at p. 1; 136-6 at p. 1) (emphasis added).

---

[6] The settlements use the defined term "incident" rather than "collision," but the terms share a meaning: the June 15, 2016 car accident on U.S. Highway 9 in Mobile County, Alabama.

7

1. "As The Result Of"

The definite article "the" is "[u]sed before singular or plural nouns and noun phrases that denote particular, specified persons or things." *American Heritage Dictionary of the English Language* 1803 (5th ed. 2016).[7] It is a "word of limitation" that "particularizes the subject which it precedes." *Am. Bus. Ass'n v. Slater*, 231 F.3d 1, 5 (D.C. Cir. 2000) (citation omitted). A "result" is "something that follows naturally from a particular action, operation, or course[.]" *American Heritage Dictionary of the English Language* 1497 (5th ed. 2016). And the phrase "result of" bespeaks causation. *See Likens v. Hartford Life and Acc. Ins. Co.*, 688 F.3d 197, 202 (5th Cir. 2012). So the generally prevailing meaning of the phrase "as the result of" is "sole cause of." *See* LA. CIV. CODE art. 2047. Under the first paragraph, then, the Blackmons agree to release only those claims that allege injuries caused solely by the collision. (Docs. 136-5 at p. 1; 136-6 at p. 1).

Because the first paragraph uses the "as the result of" language, it reflects a "clear intent" to settle only those claims that allege injuries caused solely by the collision. *See* LA. CIV. CODE art. 3076. The Blackmons' fraud and bad-faith claims do not allege injuries caused solely by the collision, so the claims do not allege injuries "as the result of" the collision, and the first paragraph reflects no "clear intent" to settle them. *See id.*

---

[7] A Justice of the United States Supreme Court and a leading lexicographer have identified the American Heritage Dictionary of the English Language as among "the most useful and authoritative for the English language" for the period of 2001 to the present. *See* Antonin Scalia & Bryan A. Garner, *A Note on the Use of Dictionaries*, 16 GREEN BAG 2d 419, 423, 427–28 (2013).

8

## B. Paragraph Three

The second indicator of the "differences" the parties "clearly intended" to settle is the language in the third paragraph of the settlements. *See* LA. CIV. CODE art. 3076. In that paragraph, the Blackmons acknowledge "that this payment is a full and final settlement of all claims for injuries and other damages incurred *as a result of* the incident." (Docs.136-5 at p. 1; 136-6 at p. 1) (emphasis added).

### 1. "As A Result Of"

The indefinite article "a" is"[u]sed before nouns and noun phrases that denote a single but unspecified person or thing." *American Heritage Dictionary of the English Language* (5th ed. 2016). It may have two or more referents. *See C.I.R. v. Kelley*, 293 F.2d 904, 912 (5th Cir. 1961) (Wisdom, J.). Considering the meaning of "result of" outlined above, the generally prevailing meaning of the phrase "as a result of" is "cause of." *See* LA. CIV. CODE art. 2047. Under the third paragraph, then, the Blackmons acknowledge "full and final settlement" only of those "claims for injuries and other damages" caused by the collision. (Docs. 136-5 at p. 1; 136-6 at p. 1).

Because the third paragraph uses the "as a result of" language, it reflects a "clear intent" to settle only those "claims for injuries and other damages" caused by the collision. *See* LA. CIV. CODE art. 3076. The Blackmons' fraud and bad-faith claims do not allege "claims for injuries and other damages" caused by the collision; the claims allege injuries caused by post-collision misconduct. (Doc. 79 at ¶¶ 34–122). So the third paragraph, like the first, does not reflect a "clear intent" to settle the Blackmons' fraud and bad-faith claims. *See* LA. CIV. CODE art. 3076.

9

## C. Paragraph Four

The third indicator of the "differences" the parties "clearly intended" to settle is the language in the fourth paragraph of the settlements. *See* LA. CIV. CODE art. 3076. The fourth paragraph, like the third, uses the "as a result of" language:

> [The Blackmons] further agree to indemnify [Defendants] in the event that [Defendants] are obligated to make payment resulting from other lawsuits, liens or claims, asserted by any person or entity *as a result of* the Incident and for the cost incurred in defending same

(Docs. 136-5 at p. 1; 136-6 at p. 1) (emphasis added).

This is an oddly worded provision.[8] Under it, the Blackmons agree to defend and indemnify Defendants from a "lawsuit," a "lien," or a "claim" that is "asserted" "as a result of" the collision. (*Id.*). Given the meaning of "as a result of," this paragraph requires the Blackmons to defend and indemnify Defendants from a "lawsuit," a "lien," or a "claim" whose assertion is caused by the collision. (*Id.*).

Defendants do not argue that the collision caused the Blackmons to "assert" a "lawsuit," a "lien," or a "claim." (Doc. 136-5 at p. 1; 136-6 at p. 1). Even if they did, the fourth paragraph's use of the "as a result of" language reflects a "clear intent" to settle only those claims that allege injuries caused by the collision. *See* LA. CIV. CODE art. 3076. Because the Blackmons' fraud and bad-faith claims do not allege injuries caused by the collision, the claims are not asserted "as a result of the Incident," and the fourth paragraph does not reflect a "clear intent" to settle them. *See id.*

---

[8] This paragraph requires a causal link between the "assert[ion]" of a "lawsuit," "lien," or "claim" and the collision itself. (Doc. 136-5 at p. 1; 136-6 at p. 1). By contrast, paragraphs one and three require a causal link between the alleged "injuries" or "damages" and the collision. (*Id.*).

10

### D. Paragraph Seven

The fourth and final indicator of the "differences" the parties "clearly intended" to settle is the language in the seventh paragraph of the settlements. *See* LA. CIV. CODE art. 3076. The seventh paragraph announces a broad—and inconsistent—indemnity obligation; it purports to require the Blackmons to "hold harmless, indemnify, and defend [Defendants] with respect to any and all other claims that may be presented by [the Blackmons]." (Doc. 136-5 at p. 2; 136-6 at p.2).

Shorn of context, the provision requires the Blackmons to defend and indemnify Defendants from any future claim the Blackmons "present," no matter how unrelated to the collision. (*Id.*). This provision extends beyond the release provisions: it purports to require the Blackmons to indemnify Defendants from claims the Blackmons have not released. (*Id.*).

Context, however, is required. *See* LA. CIV. CODE art. 2050. The Court must interpret the seventh paragraph's indemnification provision "in light of the other provisions so that each is given the meaning suggested by the contract as a whole." *Id.* So the scope of the release provisions in paragraphs one and three informs the scope of the indemnification provision in paragraph seven. *See Brown v. Drillers, Inc.*, 630 So. 2d 741, 758 (La. 1994); *Day v. Ocean Drilling & Expl. Co.*, 353 F. Supp. 1350, 1351 (E.D. La. 1973) (Rubin, J.) (observing that interpreting a contract containing an indemnity agreement "is not to be determined by narrowly parsing a single clause or sentence, buy by reading the contract as a whole").

11

The release provisions in paragraphs one and three do not contemplate future claims unrelated to the collision. (Docs. 136-5 at p. 2; 136-6 at p. 2). So the indemnification provision in paragraph seven of the same instrument does not, either. *See Brown*, 630 So. 2d at 758. Placed in proper context, paragraph seven's indemnification provision is thus limited to claims for damages allegedly caused by the collision. (Docs. 136-5 at p. 2; 136-6 at p.2).

* * *

The settlements containing the indemnification provisions use inconsistent language that fails to reflect the requisite "clear intent" to resolve the Blackmons' fraud and bad-faith claims. Because the settlements do not cover the Blackmons' fraud and bad-faith claims, the indemnification provisions in those settlements do not require the Blackmons to defend and indemnify Defendants' against the Blackmons' fraud and bad-faith claims.

## V. CONCLUSION

Accordingly,

**IT IS ORDERED** that the **Motion for Partial Summary Judgment (Doc. 136)** is **GRANTED IN PART** and **DENIED IN PART**, as follows: the indemnification provisions in the settlements do not require the Blackmons to defend or indemnify Defendants against the Blackmons' fraud and bad-faith claims; the Court defers ruling on the question whether the indemnification provisions require the Blackmons to defend or indemnify Defendants against any other claims.

Baton Rouge, Louisiana, this 31ST day of May, 2019.

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**