# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **TED BLACKMON, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | |
| | **NO. 18-142-BAJ-RLB** |
| **BRACKEN CONSTRUCTION COMPANY, INC., ET AL.** | |

## ORDER

Before the Court is Plaintiffs' Motion to Quash Subpoena. (R. Doc. 215). Defendant Bracken Construction Company, Inc. ("Bracken") filed an opposition. (R. Doc. 216). Plaintiffs filed a reply. (R. Doc. 217). Bracken filed a surreply. (R. Doc. 221).

**I.  Background**

This action concerns a head-on collision between two vehicles and settlement agreements that followed. (R. Doc. 15). Ted Blackmon and Ruthie Blackmon ("Plaintiffs") have alleged claims against the following Defendants: Bracken; C3 Construction Services, Inc. ("C3"); John Evelio Jaramillo; Anthony Ver Meer; The Charter Oak Fire Insurance Company ("Charter Oak"); Travelers Property Casualty Company of America ("Travelers Property"); and Travelers Excess and Surplus Lines Company ("Travelers Excess"). Plaintiffs bring tort claims concerning the underlying incident, seek rescission of the settlement agreements, and bring various other claims including bad faith settlement practices, fraudulent misrepresentation, equitable estoppel, unjust enrichment, and promissory estoppel.

Plaintiffs allege that the head-on collision occurred on June 15, 2016, when a truck driven by Mr. Jaramillo, while in the course and scope of his employment with C3 and Bracken, struck a sedan driven by Mr. Blackmon and carrying two passengers, Shemika Robinson and her son Khance Blackmon, who were both killed in the collision. (R. Doc. 15 at 7-12). Khance Blackmon is the son of Ted Blackmon and grandson of Ruthie Blackmon. (R. Doc. 15 at 13).

Plaintiffs allege that after the collision, they engaged in certain claims negotiations with Mr. Ver Meer, who acted on behalf of Charter Oak, Travelers Property, and Travelers Excess, regarding the wrongful death of Khance Blackmon. (R. Doc. 15 at 15-28). Plaintiffs allege that in correspondence dated July 22, 2016 and other communications, Mr. Ver Meer informed Plaintiffs that the only policy that provided coverage was issued to C3 by Charter Oak in the amount of $1 million, and that, in reliance on this representation, Plaintiffs settled for $650,000. (R. Doc. 15 at 16-18). Plaintiffs now assert that there were in fact two additional policies providing coverage issued to Bracken, a policy providing $1 million in coverage issued by Travelers Property and a policy providing $10 million in coverage issued by Travelers Excess. (R. Doc. 15 at 21). Plaintiffs specifically assert that prior to settling, Mr. Blackmon did not receive an August 23, 2019 letter from Mr. Ver Meer informing him of the additional $11 million in coverage. (R. Doc. 15 at 24-26). The August 23, 2016 letter states that a separate file was opened on the foregoing policies and provides the contact information for Matt Willson, the claims adjuster on the policies. (R. Doc. 181-2).

The subpoena commands the non-party TracFone Wireless, Inc. ("TracFone") to produce, in Metairie, Louisiana, "Certified copies of the phone records (including incoming and outgoing calls, incoming and outgoing text and photo messages as well as any and all data usage, its source, time and volume or quantity)" for two cell phone numbers for the time period of August 1, 2016 through September 30, 2016. (R. Doc. 215-3). There is no dispute that the cell phone numbers identified in the subpoena were previously used by Mr. Blackmon and were identified in discovery by Plaintiffs. (R. Doc. 215-1 at 3-4). Plaintiffs filed the instant motion to quash the subpoena in the U.S. District Court for the Eastern District of Louisiana, which transferred the motion to this district for resolution. *See Blackmon et al. v. Bracken Construction Company et al.*, Misc. Case No. 18-124-BAJ-RLB (M.D. La.).

Plaintiffs assert that the subpoena must be quashed because (1) Bracken improperly served the subpoena by facsimile, (2) the subpoena improperly commands compliance beyond 100 miles, and (3) the subpoena improperly invades Mr. Blackmon's privacy interest in his cell phone records. (R. Doc. 215-1 at 6-13). In addition to arguing that the text messages, photo messages, and data usage sought is completely irrelevant, Plaintiffs argue that records of incoming and outgoing calls are "not yet" relevant because the defendants have not produced records in their possession, custody, or control indicating that relevant conversations took place during the requested time period. (R. Doc. 215-1 at 9-10). Plaintiffs assert the information sought is cumulative and duplicative because Travelers Property and/or Travelers Excess have withheld from production their own records of communications involving Mr. Blackmon, and Bracken has access to those records pursuant to a joint defense agreement. (R. Doc. 215-1 at 8-9).

In opposition, Bracken asserts that (1) on September 2, 2016, Mr. Blackmon called Mr. Willson indicating that he received the August 23, 2016 letter, (2) on September 7, 2016, Mr. Blackmon called Mr. Ver Meer to confirm receipt of the August 23, 2016 letter, and (3) on October 4, 2016, Mr. Blackmon called Mr. Willson seeking to settle for $5-6 million on the additional policies. (R. Doc. 216 at 2-3). Bracken asserts that the specific purpose of the subpoena "is to determine whether [Mr. Blackmon] did in fact make outgoing calls to Willson and Ver Meer in August and September of 2016." (R. Doc. 216 at 5). Bracken further asserts that it does not have any objection to entering into a protective order or for in-camera inspection of the documents to protect Mr. Blackmon's privacy interests. (R. Doc. 216 at 7). Finally, Bracken asserts that the issues with respect to service of the subpoena and the 100-mile requirement of Rule 45 are moot because it served a modified subpoena on TracFone's registered

agent in Mandeville, Louisiana (which is within 100 miles of Metairie) by certified mail. (R. Doc. 216-1).

In reply, Plaintiffs argue that the information sought is duplicative and cumulative of information withheld as privileged by Travelers Property and/or Travelers Excess, that the subpoena raises significant confidentiality concerns, and that the second subpoena was improperly served by certified mail. (R. Doc. 217).

In surreply, Bracken argues that it does not have access to the documents withheld as privileged by Travelers Property and/or Travelers Excess notwithstanding the joint defense agreement, any confidentiality concerns can be addressed by in-camera review, and the records are sought to prove Mr. Blackmon knew of Mr. Willson's involvement in the handling of the claims. (R. Doc. 221).

## II. Law and Analysis

Parties have limited standing to quash subpoenas served on non-parties pursuant to Rule 45. *See Frazier v. RadioShack Corp.*, No. 10-855, 2012 WL 832285, at *1 (M.D. La. Mar. 12, 2012) ("[A] plaintiff cannot challenge a Rule 45 subpoena directed to a third party on the basis that it violates another person's privacy rights . . ., that the subpoena is overly broad, or that the subpoena seeks information that is irrelevant because only the responding third party can object and seek to quash a Rule 45 subpoena on those grounds."). Nevertheless, a party has standing to move for a protective order pursuant to Rule 26(c) seeking to limit the scope of discovery, even if the party does not have standing pursuant to Rule 45(d) to bring a motion to quash a third-party subpoena. *Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 240 n. 2 (E.D. Va. 2012); *Auto–Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005); *Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18, 22 (D.D.C. 2005).

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Rule 26(c) of the Federal Rules of Civil Procedure allows the court to issue a protective order after a showing of good cause "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

There is no dispute that Mr. Blackmon has standing to challenge the subpoena in light of his personal interest in his cell phone records. *See Howard v. Seadrill Americas, Inc.*, No. 15-2441, 2016 WL 7012275, 83 (E.D. La. Dec. 1, 2016); *Winter v. Bisso Marine Co., Inc.*, No. 13-

5191, 2014 WL 3778833 (E.D. La. July 29, 2014). To the extent Plaintiffs seek to quash the subpoena on the basis that it was improperly served and/or was made in violation of the 100-mile requirement of Rule 45, those issues appear to be moot and are properly challenged by the actual recipient of the subpoena. As Plaintiffs have not demonstrated that they have standing to challenge those issues, the Court will solely consider Mr. Blackmon's arguments with respect to the substantive information sought by the subpoena.

Having reviewed the arguments of the parties, the Court concludes that the information sought in the subpoena is overly broad considering Mr. Blackmon's privacy interests and the scope of discovery. Bracken has made no arguments with respect to its request for data usage, and the Court finds no basis for concluding that this information is within the scope of discovery. Similarly, Bracken has made no arguments with respect to its request for communications preceding the date of the letter at issue. Finally, while Bracken states that it is only seeking communications involving Mr. Ver Meer and Mr. Willson, the subpoena needlessly seeks evidence of other communications for a two-month period.

The Court concludes that records of outgoing and incoming calls and text messages involving Mr. Ver Meer and/or Mr. Willson from August 23, 2016 through September 30, 2016 fall within the scope of discovery. Evidence of any such communications and/or attempted communications between Mr. Blackmon and the claims adjusters at issue is relevant to the claims and defenses in this action, including whether Mr. Blackmon actually received the August 23, 2016 letter. Mr. Blackmon has put these communications at issue in this matter sufficient to overcome any privacy interest. This discovery is proportional to the needs of the case given, among other things, the amount in controversy, access to the information, and the importance of the discovery. Given Mr. Blackmon's denial that he received the August 23, 2016 letter,

affirmative evidence of any such calls is not duplicative or cumulative of claims notes purporting to document such calls that may have been withheld as privileged by Bracken's co-defendants.[1]

Based on the foregoing, the Court will limit the scope of the subpoena to certified copies of cell phone records (for the cell phone numbers on the subpoena) reflecting incoming and outgoing calls (or attempted calls) or text messages to Mr. Ver Meer and/or Mr. Willson from August 23, 2016 through September 30, 2016. Bracken shall provide the relevant telephone numbers of Mr. Ver Meer and/or Mr. Willson to TracFone. TracFone may also produce evidence of any text or photo messages sent to or received from Mr. Ver Meer and/or Mr. Willson.

### III. Conclusion

**IT IS ORDERED** that Plaintiffs' Motion to Quash Subpoena (R. Doc. 215) is **GRANTED IN PART and DENIED IN PART**. The subpoena is modified in accordance with this Order.

**IT IS FURTHER ORDERED** that Bracken shall provide a copy of this Order to TracFone within **7 days** of the date of this Order.

Signed in Baton Rouge, Louisiana, on November 8, 2019.

_____
RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

---

[1] The Court makes no ruling at this time regarding whether any such claims documents were properly withheld on the basis of privilege.