UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**TED MARIO BLACKMON, et al.**                                   **CIVIL ACTION**

**VERSUS**                                                                      **NO. 18-142-BAJ-SDJ**

**BRACKEN CONSTRUCTION COMPANY, INC., et al.**

# ORDER

Throughout discovery, the Insurer Defendants have sought to withhold nearly every document in their claim files based on the attorney-client privilege or work product doctrine. These documents date back to 2016, when the underlying accident occurred. The Insurer Defendants additionally claim the joint defense or common interest privilege precluded any waiver from occurring when those documents were contemporaneously shared between counsel and amongst the various insurers and their insureds, all of whom are named Defendants. *See McNally Tunneling Corp. v. City of Evanston, Illinois*, 2001 WL 1246630, at *2 (N.D. Ill. Oct. 18, 2001) (Generally, "a party waives the confidentiality of privileged communications by disclosing the information to a third party. Under the common interest doctrine, however, the disclosure . . . will not result in waiver if the parties share a common interest . . . .").

To establish the common interest or joint-defense privilege, the proponent must generally show that documents or communications "were exchanged among attorneys with identical litigation perspectives to coordinate legal strategies, or to advance a joint defense effort or strategy that has been decided upon and undertaken by the parties and their respective counsel." *LeBlanc v. Texas Brine Co., LLC*, 2019 WL 5265063, at *6 (E.D. La. Oct. 17, 2019) (applying Louisiana

law). "A written agreement is the most effective method of establishing the existence of a common interest agreement, although an oral agreement whose existence, terms and scope are proved by the party asserting it, may provide a basis for the requisite showing." *Intex Recreation Corp. v. Team Worldwide Corp.*, 471 F. Supp. 2d 11, 16 (D.D.C. 2007).

"Blanket assertions of privilege are unacceptable, as the Court and other parties must be able to test the merits of a privilege claim." *United States v. Ocwen Loan Servicing, LLC*, 2016 WL 1031157, at *4 (E.D. Tex. Mar. 15, 2016). Nonetheless, the Insurer Defendants have simply claimed the joint defense privilege over withheld documents, refusing to provide even an iota of information in response to discovery requests seeking the terms of any joint defense agreement, including "when [the] privilege arose." (R. Doc. 213-1 at 15); (R. Doc. 213-2 at 49-50, 95-96, 110-11).

According to Plaintiffs, the timing of any agreement—whether oral or written—"is particularly important here," as the Insurer Defendants rely on the joint defense privilege to withhold documents "from as early as July 2016." (R. Doc. 213-1 at 5). Plaintiffs therefore moved to compel information related to the privilege, including any written agreement between the Defendants. Still refusing to produce any responsive information, the Insurer Defendants argue the "existence of any such agreement is irrelevant" and that "the contents of any such agreement would be protected from disclosure by the attorney-client privilege, work-product doctrine, joint defense privilege, and/or any other potentially applicable privilege." (R. Doc. 213-2 at 95-96).

Generally, "[w]hen a party seeks to compel production of a joint defense agreement, courts will examine the agreement in camera and make an independent determination regarding the nature of the agreement." *Biovail Labs. Int'l SRL v. Watson Pharm., Inc.*, 2010 WL 3447187, at *1 (S.D. Fla. Aug. 30, 2010) (declining to order production, but noting the most relevant information in the

agreement—the parties and the date of signing—had already been provided).[1] And so, the Court ordered Defendants to file their Joint Defense Agreement under seal (R. Doc. 287 at 55) for its review. Defendants complied, filing their Joint Defense Agreement under seal on November 23, 2020. (R. Doc. 288). The Court has now reviewed the Agreement and finds portions of it should be produced.

First, under the particular circumstances of this case, the Agreement is relevant to Defendants' assertion of the joint defense or common legal interest privilege. This is because Defendants have relied on the privilege to withhold information dating as far back as 2016—2 years before suit was filed—but have refused to provide any information regarding its applicability. At times, they even seem unwilling to state whether an agreement (written or oral) exists at all. (R. Doc. 213-2 at 49-50). This is quite significant; because "[w]hile a written agreement is not a prerequisite for invoking the common interest doctrine, parties seeking to invoke the exception must establish that they agreed to engage in a joint effort and to keep the shared information confidential from outsiders." *Ken's Foods, Inc. v. Ken's Steak House, Inc.*, 213 F.R.D. 89, 93 (D. Mass. 2002).

Defendants are correct that other courts have found joint defense agreements were not relevant to a party's claim of defense, and therefore not discoverable. But in each of those opinions, the proponent of the privilege had disclosed the parties to the agreement, the date the agreement was reached, and its general scope seemed to be understood. *See Warren Distrib. Co. v. InBev*

---

[1] The Court has reviewed the Joint Defense Agreement (R. Doc. 288-1), along with the cases cited by both sides (R. Doc. 213-1 at 15-16); (R. Doc. 231 at 7-9). But while each side provided caselaw from district courts throughout the country supporting its position, the Court is not bound by any of them. Beyond that, caselaw in this area is not entirely helpful. As other courts have noted, "'cases addressing the question of whether JDAs are privileged fall, quite frankly, all over the lot.'" *Wausau Underwriters Ins. Co. v. Reliable Transportation Specialists, Inc.*, 2018 WL 4235077, at *1 n.1 (E.D. Mich. Sept. 6, 2018) (quoting *Steuben Foods, Inc. v. GEA Process Eng'g, Inc.*, 2016 WL 1238785, at *1 (W.D.N.Y. Mar. 30, 2016)).

*USA L.L.C.*, 2008 WL 4371763, at *3 (D.N.J. Sept. 18, 2008) ("[T]he Court finds the only arguably relevant information in the Agreement has been disclosed. Plaintiffs already know the Agreement was entered into between InBev S.A. and Anheuser-Busch Companies, Inc., and their attorneys, on May 8, 2006. Further, A-B has already acknowledged that during the course of the negotiations leading to the Import Agreement, 'Anheuser-Busch and InBev nv/sa anticipated that the agreement could give rise to legal and regulatory issues in which they would share a common interest. . . . Aside from the aforementioned information, nothing else in the Agreement is relevant to the parties' claims and defenses."); *In re Takata Airbag Prod. Liab. Litig.*, 2017 WL 10351709, at *5 (S.D. Fla. Mar. 7, 2017) ("Moreover, to the extent that the mere existence of the agreement, the names of the parties to the agreement, or the date of the agreement is relevant, that information was already disclosed in Honda's Response to Plaintiffs' Second Request for Production."); *Biovail Labs. Int'l SRL v. Watson Pharm., Inc.*, 2010 WL 3447187, at *2 (S.D. Fla. Aug. 30, 2010) ("Biovail disclosed Sanofi as the other party to the agreement after Watson filed its motion to compel, and during the oral argument Biovail agreed to provide Defendants with the date on which the agreement was signed, which is February 18, 2010. Defendants now know the parties to the joint defense agreement and the date of the agreement—the only relevant information in this particular joint defense agreement.").

Not only are the parties and date relevant, but the scope of any Agreement is also particularly relevant in this case. Here, nearly every document withheld by Defendants predates not only the Complaint, but likely the Joint Defense Agreement itself.[2] And so, whether that agreement is limited to the exchange of information during this litigation, or whether it

---

[2] The exact date the Agreement was executed is unclear from the document itself. Based on the Court's review, it seems that each party signed the document separately. However, each signature does not additionally note the date of signing. But the last page of the Agreement suggests it was executed sometime in March of 2018, and the cover letter distributing copies of the executed agreement to each of the parties is dated April 6, 2018.

memorializes an unwritten agreement previously established by the Defendants, or otherwise refers to the communications and documents exchanged during the adjustment of the Blackmons' claims in 2016 and 2017, is relevant.[3] *See Ken Foods, Inc.*, 213 F.R.D. at 94 (court examined documents in-camera to determine critical question of whether documents for which protection was sought predated any agreement to cooperate).

Plaintiffs are therefore entitled to information supporting the privilege—i.e., the date an agreement was entered, the parties to the agreement, and its general scope. *See* 19 La. Civ. L. Treatise, Evidence And Proof § 8.6 (2d ed.) ("A joint defense agreement extends the attorney client privilege to protect the confidentiality of a communication from one defendant to the attorney for another defendant where a joint defense effort or strategy has been decided upon and undertaken by the parties and their counsel."). The Court notes however that production of the entire Agreement is unnecessary. Only those paragraphs or portions necessary to provide the relevant information must be produced, as explained below.

---

[3] Defendants also seem to suggest details establishing the common interest privilege are irrelevant because the privilege should be assumed to apply, presumably as early as June 2016, based simply on the status of the parties. More specifically, they argue "[t]he joint defense or common interest privilege applies to communications between insurers and insureds and their respective attorneys regardless of whether an agreement is formalized in writing." (R. Doc. 231 at 8). The Insurer Defendants cite two cases for this proposition, *North River Insurance Company v. Columbia Casualty Company*, 1995 WL 5792 (S.D.N.Y. 1995) and *Nieman v. Hale*, 2013 WL 6814789 (N.D. Tex. Dec. 26, 2013).

But the Court declines to adopt such a bright-line rule. *See McNally Tunneling Corp. v. City of Evanston, Illinois*, 2001 WL 1246630, at *3 (N.D. Ill. Oct. 18, 2001) ("For example, although an insurer and an insured agree to cooperate in defending a lawsuit—reflecting their shared interest in lowering the total amount of damages—the common interest doctrine does not apply if those parties have an incentive to blame each other for alleged wrongful conduct.").

As one of the cases cited by Defendants warns, "the determination of whether the common interest doctrine applies cannot be made categorically" and "a common interest cannot be assumed merely on the basis of the status of the parties." *North River Ins. Co.*, 1995 WL 5792, at *4, *5 (rejecting an argument similar to the one advanced by Defendants, and finding no common interest among reinsurer and ceding insurer where, among other things, there was no "evidence that the two coordinated litigation strategy in any way").

Moreover, even if we accept the Insurer Defendants' argument that the common interest doctrine applies to communications between an insurer, its insured, and counsel, that is not the situation here. Instead, this case involves communications among separate insurance companies, and the separate entities they insure, along with their various counsel.

Having found the information sought is relevant, the Court must determine whether it is privileged, as Defendants claim. As an initial matter, the Court notes that the Joint Defense Agreement itself is not designated as "Confidential," which is inconsistent with the terms of the agreement itself, and nothing in the document indicates any intention that it remain privileged. Despite this obvious flaw, the Insurer Defendants nonetheless claim the document is subject to the attorney-client privilege and the work product doctrine.

The attorney-client privilege covers confidential communications between the client and the attorney. *Blackmon v. Bracken Constr. Co., Inc.*, 2020 WL 6065520, at *6 (M.D. La. Oct. 14, 2020) (protects communications made in confidence between client and his or her lawyer for purpose of obtaining or giving legal advice). The Insurer Defendants do not provide any evidence to support this claim of privilege and the document itself (R. Doc. 288-1) does not appear to contain any information subject to the attorney-client privilege. The only portion of the document that comes close to falling within the attorney-client privilege is the second sentence of Paragraph 5, Part II, which will not be produced to Plaintiffs. The portions noted below that must be produced do not contain any information subject to the attorney-client privilege.

Turning to work product, Rule 26(b)(3) protects documents prepared in anticipation of litigation. However, unless the documents reveal an attorney's mental impressions, work product can be overcome on a showing of substantial need. *See Hodges, Grant & Kaufmann v. U.S.*, 768 F.2d 719, 721 (5th Cir. 1985). With that in mind, the Court's review indicates that the Joint Defense Agreement was prepared in anticipation of litigation, as this lawsuit appears to have commenced before the Agreement's execution, and the terms of the Agreement explicitly refer to this lawsuit.[4]

---

[4] But as another district court pointed out: "An argument might be fashioned that the agreement should not be given work-product protection because the parties who entered into it lacked a reasonable expectation of confidentiality. The point of the agreement is to permit the exchange of otherwise privileged documents without fear of a waiver.

However, after in camera inspection, the Court finds the terms of the Joint Defense Agreement do not reveal the mental processes of the attorneys. "Rather, the terms state general information concerning the purpose and parameters of the relationship between the parties. Thus, the agreement is subject to qualified privilege," if any.[5] *Hall Patent Grp., LLC v. Indus. Noise Control Corp.*, 2006 WL 8437278, at *5 (N.D. Tex. Sept. 19, 2006).

To overcome the privilege, Plaintiffs must show a substantial need for the information. The Court finds that burden has been met under the circumstances. The Insurer Defendants have refused to provide any relevant information about their common interest agreement, all the while insisting on application of the privilege. The relevant portions of the Joint Defense Agreement are therefore subject to production, as outline below. *See Williams v. United States Environmental Servs., LLC*, 2016 WL 684607, at *2 (M.D. La. Feb. 18, 2016) ("Defendant has shown a compelling need for Plaintiff's [otherwise privileged] tax returns . . . because she has not produced any other documents relating to the wages she has earned," despite defendant's discovery requests. "While the Court recognizes that this information may also be obtained" through other discovery, "that fact does not negate Defendant's showing.").

---

Arguably, the defendants had to anticipate the need to disclose the agreement to protect their position in the event of a waiver challenge to their privilege claims." *R.F.M.A.S., Inc. v. So*, 2008 WL 465113, at *1 (S.D.N.Y. Feb. 15, 2008).

[5] Although the Court finds the Joint Defense Agreement is protected as ordinary work product, a stronger argument from Plaintiffs may have resulted in a difference outcome. The terms of this particular Agreement are standard; it includes boilerplate language. Other courts considering similar agreements have rejected assertions of work product. *See United States v. Hsia*, 81 F. Supp. 2d 7, 11 n.3 (D.D.C. 2000) ("These decisions do not convince this Court that either the existence or the terms of a JDA are privileged."); *U.S.A. v. Omidi*, 2020 WL 6600172, at *2 (C.D. Cal. Aug. 12, 2020) ("The Court has reviewed the JDA in camera. It generally recites the participating parties' invocation of a common defense interest, sets forth general terms of their understanding and procedure, and memorializes the parties to the agreement. It does not contain any substantive legal advice or additional information that can be construed as privileged."); *Rodriguez v. Gen. Dynamics Armament & Tech. Prod., Inc.*, 2010 WL 1438908, at *3 (D. Haw. Apr. 7, 2010) ("Having reviewed the JDA in camera, the Court finds that it does not contain any privileged or protected material. Instead, the contents include information disclosed by the parties during the course of litigation via motions, disclosures, documents and pleadings.").

And so, Plaintiffs' Motion to Compel (R. Doc. 213) is **GRANTED** to the extent Plaintiffs seek information related to the joint defense or common legal interest privilege asserted by Defendants. Within **14 days** of this Order, the Insurer Defendants must **supplement** their responses to **Interrogatory No. 14** and **Request for Production Nos. 27 and 41**, as follows:

- The Insurer Defendants must **supplement** their response to **Interrogatory No. 14**, by indicating the **date** each party **signed** the Joint Defense Agreement (R. Doc. 288-1).

- The Insurer Defendants must **supplement** their responses to **Request for Production Nos. 27 and 41** by producing the following **portions** of the **Joint Defense Agreement** (R. Doc. 288-1):

    - **Page 1** of the Agreement, which contains the opening paragraph indicating the **parties** to the Agreement (R. Doc. 288-1 at 2);

    - **Paragraphs 1, 2, 3 and 4** of **Part I** (R. Doc. 288-1 at 3) ("Recitals"), **except** that **Paragraph 3** should be **redacted** following the word "**strategy**" in the first sentence. The information is these Paragraphs generally indicate the scope of the Agreement (R. Doc. 288-1); and

    - the **closing Paragraph** on **page 7** (R. Doc. 288-1 at 8) ("In witness whereof . . . .") and the **signature pages** (R. Doc. 288-1 at 9-13), which give some indication as to the date of the Agreement and confirm its execution.

Signed in Baton Rouge, Louisiana, on January 15, 2021.

_____
**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**