UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

TED MARIO BLACKMON, ET AL.                                 CIVIL ACTION

VERSUS

BRACKEN CONSTRUCTION                                      NO. 18-00142-BAJ-SDJ
COMPANY, INC., ET AL.

## ORDER

Before the Court is Plaintiffs' **Motion for Review of Magistrate Judge's Order on Defendant's Motion to Compel Discovery Responses and Ruling on Attorney-Client Privilege and Work Product Protection (Doc. 282)**. Plaintiffs seek an order from this Court reversing in part the United States Magistrate Judge's Order on Defendant Charter Oak's Motion to Compel (Doc. 210) and on issues related to the assertion of attorney client-privilege over the testimony of former counsel for the Blackmons. (Docs. 204–207). (Doc. 278). Specifically, the Plaintiffs request that the Court set aside Part III.B of the Magistrate Judge's Order, (Doc. 278, p. 10-29), which found that Plaintiffs waived attorney-client privilege and work product protection. The Motion is opposed. (Doc. 286). A reply to the Opposition was filed by the Plaintiffs. (Doc. 297).

For the foregoing reasons, the Motion is **DENIED**. Given the denial of the instant motion, Plaintiffs' related motions—the Motion to Stay Magistrate Judge's Order Pending Review (Doc. 283), the Motion for Expedited Consideration of the

1

Motion to Stay Magistrate Judge's Order Pending Review (Doc. 284), and the Joint Motion for Entry of Consent Judgment (Doc. 289) are **TERMINATED** as moot.

I. BACKGROUND

   A. Factual Background

The Court adopts the factual background as described in the Order Resolving Briefed Discovery Issues and Charter Oak's Motion to Compel (Doc. 278).

This matter arises from a settlement following a June 2016 car crash. (Doc 278, p. 1). On June 15, 2016, Jhon Jaramillo collided head on with a vehicle driven by Plaintiff Ted Blackmon. (*Id.* at 2). The collision not only injured Ted Blackmon and the driver of the car Jaramillo attempted to pass, but also resulted in the death of Ted Blackmon's long-time girlfriend, Shemika Robinson, and their two-year-old son, Khance Blackmon. (*Id.*).

At the time of the collision, Jaramillo was a dual employee of two related companies, Defendants C3 Construction Services, Inc. ("C3"), and Bracken Construction. (*Id.* at p. 1). C3 carried a $1 million auto policy issued by Defendant Charter Oak Fire Insurance Company ("Charter Oak"). (*Id.* at p. 2). Bracken Construction carried a $1 million liability policy issued by Defendant Travelers Property Casualty Company ("Travelers Property") and a $10 million excess policy issued by Travelers Excess and Surplus Lines Company ("Travelers Excess"). (*Id.*).

Anthony Ver Meer was assigned by Charter Oak to adjust the claim under the $1 million policy issued on behalf of C3. In July 2016, Ver Meer informed the victims of the accident of C3's $1 million policy limit by certified mail. (*Id.*). In August 2016, Ver Meer realized that Jaramillo was most likely in the course and scope of his

2

employment with Bracken Construction at the time, potentially making the additional $11 million in coverage under Bracken Construction's policies available. (*Id.*).

Ver Meer allegedly notified the victims, including Ted Blackmon, of this newly available coverage by certified letter on August 23, 2016. (*Id.*). The letter identified and included contact information for Matt Willson, the adjuster for Travelers who would handle the claim, and James Holland, the attorney for Bracken Construction. (*Id.*).

Ted Blackmon claims he never received this letter, and that he and his mother, Ruthie Blackmon, were fraudulently induced into settling his son's wrongful death claim for $650,000 in October 2017—an amount allegedly far below what the settlement was worth. (*Id.*). Plaintiffs also allege that Ver Meer lied about the availability of additional coverage to Ted Blackmon's attorneys, with the intent of forcing Ted Blackmon to settle his claim while he was unrepresented. (Doc. 79, p. 29).

Between February and April of 2017, Ted Blackmon retained Florida attorneys Austin Ward and Scott Barnes to determine whether additional coverage was available for the accident beyond the $1 million provided under the C3 policy, as well as to negotiate Khance Blackmon's wrongful death claims. (Doc. 278, p. 10). Plaintiffs allege that Ver Meer lied to Ward and Barnes about the availability of additional coverage, which then lead to the disengagement of Ward & Barnes as his counsel. (*Id.*). Plaintiffs also claim that Ver Meer lied to Nick Medley, the Florida attorney Ted and Ruthie Blackmon eventually hired to open the estate of Khance Blackmon.

(*Id.*).

However, Ver Meer alleges that he had multiple discussions directly with Ted Blackmon about the additional coverage, but that Ted Blackmon had other motivations for settling the claim quickly, namely that he was having financial difficulties. (*Id.* at p. 3). Matt Willson also asserts that Ted Blackmon called him on his direct line after the certified letter was sent and that he had multiple phone calls with Ted Blackmon about the additional coverage that was potentially available to him under the Bracken policies. (*Id.*). Defendants obtained phone records that corroborate these allegations. (*Id.*).

### B. Procedural History

On September 16, 2019, Defendants subpoenaed Austin Ward, Scott Barnes, and Nick Medley for depositions. (Doc. 278, at p. 11). On September 27, 2019, Charter Oak filed a Motion to Compel Plaintiffs to respond to all of the written discovery requests, and produce documents Charter Oak believed were improperly withheld. (*Id.*). Plaintiffs objected to the depositions and the Motion to Compel, in relevant part, based on attorney-client privilege. (*Id.*). Plaintiffs claimed that, while Defendants could question the attorneys about their communications with Ver Meer, all other subject matter was privileged. (*Id.*). In particular, the parties disagreed about whether the attorney-client privilege and work product doctrines precluded Defendants from asking Plaintiffs' former counsel about:

1. When and how the Blackmons first learned of the $11 million in coverage under the Bracken policies and their potential availability;
2. Ted Blackmon's reasons for disengaging Ward and Barnes in April 2017,

4

and;

   3. Ted Blackmon's attempts to secure a loan against his potential settlement.

(*Id.*).

On October 14, 2020, the Magistrate Judge found that Plaintiffs had waived their attorney-client privilege as to those topics, because they had placed them "at issue" in this litigation. (Doc. 278, p. 16–26). Plaintiffs now seek to overturn this portion of the Magistrate Judge's Order. (Doc. 282). This Motion is opposed. (Doc. 286). Plaintiffs have narrowed their objections twice. First, Plaintiffs withdrew their objection to the extent that it required the Blackmons to produce a single document related to the disengagement of counsel in Florida by the Blackmons. (Doc. 285). Second, Plaintiffs removed the Blackmons' objections to the Order to the extent that it found that Blackmons' former counsel would be required to provide deposition testimony regarding the communications they may have had with the Blackmons regarding the existence of the coverage for the collision. (Doc. 300).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 72 confers upon magistrate judges the responsibility to make determinations or recommendations for pretrial matters. Magistrate judges can hear, decide, and issue orders for pretrial matters that are not dispositive of a party's claim. FED. R. CIV. P. 72(a); *see Fisher v. Waste Mgmt. of La., LLC*, No. 17-CV-00246-BAJ-RLB, 2019 WL 2713053, at *1 (M.D. La. June 28, 2019). Rule 72(a) dictates that a district judge must review decisions on nondispositive

motions by the magistrate judge and "modify or set aside any part of the order that is clearly erroneous or is contrary to law." FED. R. CIV. P. 72(a).

Under this standard, the magistrate judge's findings "should not be rejected merely because the court would have decided the matter differently." *Ordemann v. Unidentified Party*, No. CIV. A. 06-4796, 2008 WL 695253, at *1 (E.D. La. Mar. 12, 2008) (quoting *Rubin v. Valicenti Advisory Svcs., Inc.*, 471 F. Supp. 2d 329, 333 (W.D.N.Y. 2007)). Rather, the clearly erroneous standard requires that the district court affirm the decision of the magistrate judge unless "on the entire evidence [the court] is left with a definite and firm conviction that a mistake has been committed." *Id.* (citing *Moody v. Callon Petroleum Operating Co.*, 37 F. Supp. 2d 805, 807 (E.D. La. 1999)); *see also Vatter v. Navistar Int'l Corp.*, 150 F. Supp. 3d 703, 706 (M.D. La. 2015) (citing *United States v. Stevens*, 487 F.3d 232, 240 (5th Cir. 2007)). Similarly, a magistrate judge's order is "contrary to law" only if it fails to apply or misapplies relevant statutes, case law, or rules of procedure. *Ordemann*, No. CIV. A. 06-4796, 2008 WL 695253 at *1 (citing, *e.g.*, *DeFazio v. Wallis*, 459 F. Supp. 2d 159 (E.D.N.Y. 2006)).

### III. ANALYSIS

Attorney-client privilege may be waived by placing privileged communications "at issue." Under Louisiana law, a privileged communication is placed "at issue" when "the waiving party 'pleads a claim or defense in such a way that he will be forced inevitably to draw upon a privileged communication at trial in order to prevail.'" *Scherer v. Latter*, 1998 WL 205417, *3 (E.D. La. 1996) (citing *Dixie Mill Supply*

6

*Company v. Continental Casualty Company*, 168 F.R.D. 554, 555–56 (internal quotations omitted.)) The fact that the privileged communication is referred to in the litigation or is relevant to the subject matter of the litigation is not enough to constitute a waiver under Louisiana law. *Id.*

Plaintiffs object to the Magistrate Judge's finding that they waived their privilege in any way. (Doc. 282-1, p. 5). However, Plaintiffs have not cited any contrary authority or rule of procedure that clearly demonstrates that the Magistrate Judge erred in finding that Plaintiffs waived privilege under the circumstances of this case. Rather, they disagree with the Magistrate Judge's application of the Louisiana law to the facts of this case. That is not a valid basis to overturn a magistrate judge's order. Moreover, as will be discussed, Plaintiffs have placed the aforementioned categories of information "at issue."

### A. When and How Plaintiffs Learned of the Additional Bracken Policy

Plaintiffs allege throughout their complaint that Defendants intentionally "failed to communicate [] information to either of the Plaintiffs or their agents and attorneys prior to taking advantage of Plaintiffs' lack of knowledge of such important and material information regarding available insurance coverage." (Doc. 79, at ¶ 66). The Magistrate Judge determined that when and how Plaintiffs learned of the Bracken Policies was "not only relevant, but crucial to their causes of action for fraudulent omissions, material misrepresentations, detrimental reliance, and the like." (Doc. 278, p. 17). By putting this information "at issue," Plaintiffs waived their attorney-client privilege as it related to "Ward and Barnes'[s] efforts to determine the

7

existence of additional coverage." (Doc. 278, p. 24).

Plaintiffs assert that their burden only "require[s] [] that the claimant demonstrate that there was a misrepresentation, and that reliance upon that misrepresentation caused damages." (Doc. 282-1, p. 5) (citing *Sheppard v. Liberty Mut. Ins. Co.*, 2016 WL 6807400, at *2 (E.D. La. Nov. 17, 2016)). Based on this view of the law, Plaintiffs assert that "when or how the Blackmons learned about the misrepresentations or fraudulent statements is certainly not crucial to their case, since the discovery of the fraud is not a necessary element of any of the causes of action alleged in this case." (Doc. 282-1, p. 5).

Plaintiffs are technically correct that knowledge of fraud is not an explicit element of misrepresentation. However, Plaintiffs have oversimplified their burden. Under Louisiana law, a finding of fraud or intentional misrepresentation requires a finding that a plaintiff *justifiably* relied on a misrepresentation of material fact. *Sheppard*, 2016 WL 6807400, at *2. Thus, if Plaintiffs learned of the additional insurance coverages at any point in time—even from their attorneys—a jury could find that they did not justifiably rely on Ver Meer's alleged misrepresentation of the amount of coverage at issue. It is immaterial that "the Blackmons will not put at issue anything that was communicated to them by Ward & Barnes as evidence of Ver Meer's fraud," (Doc. 282-1, p. 8), because if the Blackmons or their attorneys had knowledge—from any source—of additional umbrella insurance policies, such knowledge would cast doubt on whether the Blackmons relied on Van Meer's misrepresentations in the resulting settlement negotiations.

8

This finding is consistent with case law. For example, in *Conoco Inc. v. Boh Bros. Const. Co.*, 191 F.R.D. 107 (W.D. La. 1998), plaintiff brought an action against defendant seeking to recover under a contractual indemnity agreement. To prevail, plaintiff was required to establish that an indemnitee-indemnitor relationship existed, and that the indemnitee made a reasonable settlement. *Id.* at 117. The court found that "by seeking indemnity under the contract, [plaintiff] [] put at issue the basis for its liability, its liability analysis, and the reasonableness of the settlement." *Id.* While plaintiff argued that it did not intend to rely on any withheld documents to support its indemnity claim, the court nevertheless found that plaintiff would "inevitably be forced to draw upon privileged communications to show that it [was] entitled to indemnity and that the settlement was reasonable." *Id.*

Here, the Magistrate Judge did not err in finding that "to the extent Ted Blackmon (or Ruthie Blackmon) had any communications with Austin Ward, Scott Barnes, or Nick Medley about the existence of the Bracken Policies between August 23, 2016 . . . and January 18, 2018 . . . those communications have been sufficiently placed at issue by Plaintiffs and the attorney-client privilege has been waived." (Doc. 278, p. 23). The Magistrate Judge correctly noted that "Plaintiffs cannot at once claim that when and how they learned of the Bracken Policies' existence is entirely privileged, but then selectively disclose that they were 'not aware of [the Policies] prior to executing the alleged settlement agreement . . . Not only does this constitute a partial waiver, but it is—in the most classic sense—a use of the attorney-client privilege as a sword and a shield." (Doc. 278, p. 17).

### B. Reasons for Disengaging Ward and Barnes

Similarly, the Magistrate Judge found that the Plaintiffs opened the door to discovery regarding the factors that played into the decision to disengage Ward and Barnes because Plaintiffs put their reasons for disengaging Ward & Barnes at issue in their complaint. (Doc. 278, p. 26). Plaintiffs argue that the Magistrate Judge improperly relied on arguments made in pleadings, rather than the complaint, to determine that they placed this matter in issue.

The Magistrate Judge relied on both Plaintiffs' complaint and arguments in their briefings in making his determination. The Order referenced Plaintiffs' complaint three times. (Doc. 278, p. 25) (citing Doc. 79, p. 19–25, 26, 29). Specifically, Plaintiffs assert that "Ruthie Blackmon and Ted Blackmon were not represented by legal counsel directly as a result of the fraudulent misrepresentations of Anthony Ver Meer." (Doc. 79, p. 25). However, as discussed previously, if the Blackmons did not actually disengage Ward and Barnes due to Ver Meer's representations, then they did not justifiably rely on those representations. As the Magistrate Judge found, "'[i]t would undermine the most basic concepts of fairness' to allow Ted Blackmon to claim that Ver Meer fraudulently induced him into proceeding in negotiations unrepresented, and that Defendants are liable for that conduct, 'while precluding the discovery of contrary evidence.'" (Doc. 278, p. 26) (citing *Forever Green Athletic Fields, Inc. v. Babcock Law Firm, LLC*, 2014 WL 29541, at *14 (M.D. La. Jan. 3, 2014)).

Therefore, the Magistrate Judge did not err in finding that Ted Blackmon waived the attorney-client privilege with respect to any communications or documents indicating his reasons for disengaging Austin Ward and Scott Barnes.

### C. Settlement Loan

Plaintiffs also have failed to demonstrate that the Magistrate Judge erred in finding that there was a waiver of attorney-client privilege as to communications between Ted Blackmon and his Florida counsel regarding efforts to secure a settlement loan. Plaintiffs contend that "the Magistrate Judge [] found that privileged communications regarding those efforts were [] discoverable, without any separate finding that the Blackmons had placed those communications at issue or that any other standard for waiver of attorney-client privilege applied as to those specific communications." (Doc. 282-1, p. 13).

This is incorrect. The Magistrate Judge found that Plaintiffs placed their motive for agreeing to settle Khance Blackmon's claims at issue in their complaint. (Doc. 278, p. 28). Under Louisiana law, a plaintiff's degree of reliance on alleged misrepresentations must be examined in determining fraud. *See, e.g. Kirkham v. Am. Liberty Life Ins. Co.*, 717 So. 2d 1226, 1229 (La. App. 2 Cir. 1998). Relying on *Kirkham*, the Magistrate Judge correctly found that the motivation for Ted Blackmon's settlement was placed at issue by Plaintiffs. The Magistrate Judge did not err in finding the Defendants are entitled to discover whether the agreement to settle was motivated by Ted Blackmon's financial distress. (Doc. 278, p. 28).

### IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion (Doc. 282) is **DENIED**. Plaintiffs shall comply with the Magistrate Judge's October 14, 2020 Order.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Stay Magistrate

11

Judge's Order Pending Review (Doc. 283) is **TERMINATED** as moot.

**IT IS FURTHER ORDERED** that the Plaintiffs' Motion for Expedited Consideration of the Motion to Stay Magistrate Judge's Order Pending Review (Doc. 284) is **TERMINATED** as moot.

**IT IS FURTHER ORDERED** that the Joint Motion for Entry of Consent Judgment (Doc. 289) is **TERMINATED** as moot.

Baton Rouge, Louisiana, this 25th day of May, 2021

_____
**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**